## HALLIBURTON v. COMMISSIONER OF INTERNAL REVENUE (two cases).*
### No. 7128.

Circuit Court of Appeals, Ninth Circuit.
June 3, 1935.

*Rehearing denied Aug. 26, 1935.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John G. Remey, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, Circuit Judge, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is a petition for review of an order of the Board of Tax Appeals affirming a determination of the Commissioner that deficiencies exist in petitioners' income tax returns for the year 1924, in the amount of $23,946.10 as to Erle P. Halliburton, and $21,649.89 as to his wife, Vida C. Halliburton. 25 B. T. A. 1045.

As the same facts apply to each taxpayer, it was stipulated that the causes be consolidated for hearing before the Board. The material facts are substantially as follows:

Petitioners were the equal owners of a partnership known as E. P. Halliburton Oil Well Cementing Company. The partnership was established about March 1, 1921, and until July 1, 1924, it profitably operated the business of cementing oil wells, using a patented process described and claimed in United States Letters Patent No. 1,369,891, which patent was granted to petitioner Erle P. Halliburton as of date March 1, 1921. The partnership also owned licenses to use two other patents, and owned equipment necessary to its business, as well as real estate and supplies.

On June 19, 1924, petitioners entered into an agreement with seven certain oil companies providing for the organization, under the laws of Delaware, of a corporation to be known as the Halliburton Oil Well Cementing Company, with an authorized capital stock of the par value of $350,-

000, divided into shares of $100 each. The corporation was thereafter organized and took over the assets and business of the partnership, as the parties had agreed. By the terms of the agreement, the oil companies subscribed for 1,300 shares of stock of the corporation, and paid $130,000 therefor on July 23, 1924. Petitioners subscribed for 1,780 shares of the stock and paid therefor, as provided in the agreement, by transferring to the corporation, as of date July 1, 1924, the good will of the partnership and all of the partnership assets, including equipment and supplies used in the business; real and personal property; patent No. 1,369,891, upon which the business had been built; and licenses granted to the partnership to use patent No. 1,011,484 and patent No. 1,486,883. The Board approved the finding of the Commissioner fixing the adjusted cost of the partnership assets transferred to the corporation to be $62,709.64. The list of assets so valued made no mention of the licenses to use the said two patents, or of good will. With respect to the Halliburton patent No. 1,369,891, the cost is stated in the list of assets to be $15,000 and the adjusted cost $12,216.51. It is agreed that the value of the 1,780 shares of stock received by petitioners in exchange for the partnership assets was $178,000. From July 1, 1924, the corporation operated in its name the oil well cementing business theretofore carried on by the partnership.

The real estate included in the list of partnership assets was transferred to the corporation by deed dated July 1, 1924, but the signature of Erle P. Halliburton was not affixed thereto and was not attested until July 16, 1924, and that of Vida C. Halliburton on July 23, 1924. The patent and patent licenses included in the assets transferred by the partnership were assigned to the corporation by instruments dated July 1, 1924, but the signatures thereto were not attested until July 23, 1924.

The deficiencies here in question are based upon profits resulting from the transfer of the assets of the partnership to the corporation omitted by petitioners from their income tax returns for 1924. It is contended that the transaction was a tax free exchange and falls within section 203 (b) (4) of the Revenue Act of 1924, 43 Stat. 256, 26 USCA § 934 (b) (4), which reads:

"No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

Section 203 (i) of the act, 26 USCA § 934 (i) provides that:

"The term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

A contention made by petitioners is that incorporation was completed on July 1, 1924, and that immediately thereafter they were the owners of more than 80 per cent., in fact all (1,780 shares) of the outstanding capital stock of the corporation, and so remained until July 23, 1924, when the oil companies paid in $130,000, pursuant to their subscription agreement, and became the owners of 1,300 shares of the corporate stock. The Commissioner determined that the effective date of the organization of the corporation was July 23, 1924, and that petitioners at no time thereafter owned the required 80 per cent. of the outstanding capital of the corporation. The Board approved the determination of the Commissioner.

The entire proceeding was the means adopted to carry out the agreement executed by petitioners and the oil companies on June 19, 1924. The transfer of the partnership assets as of July 1, 1924, consummated July 22, 1924, in exchange for 1,780 shares of stock, and the payment by the oil companies on July 23, 1924, of $130,000 for 1,300 shares of stock, were proceedings in furtherance of the agreement. For income tax purposes, the entire proceeding must be viewed as a single transaction. West Texas Refining & Development Co. v. Commissioner (C. C. A. 10) 68 F.(2d) 77, 80; Helvering v. Security Savings & Commercial Bank (C. C. A. 4) 72 F.(2d) 874, 876. Substance and not form controls in applying a tax statute. United States v. Phellis, 257 U. S. 156, 168, 42 S. Ct. 63, 66 L. Ed. 180; Commissioner v. Moore (C. C. A. 10) 48 F.(2d) 526; Labrot v. Burnet, 61 App. D. C. 47, 57 F. (2d) 413; Tulsa Tribune Co. v. Commissioner (C. C. A. 10) 58 F.(2d) 937, 940;

S. A. MacQueen Co. v. Commissioner (C. C. A. 3) 67 F.(2d) 857. Disregarding form and looking to the substance, it is clear that petitioners are not entitled to the benefits of section 203 (b) (4) on any theory that they were the owners of 80 per cent. 'of the outstanding stock on July 1, 1924, or at any time.

Petitioners further contend that even though the exchange did not take place until July 23, 1924, nevertheless the transaction falls within the exception to taxable gain recognized by the said provision of the statute quoted, supra, because petitioners and the oil companies transferred property to the corporation solely in exchange for its stock, and immediately after the exchange such group of persons was in control of the corporation and the amount of stock received by each was substantially in proportion to his interest in the property prior to the exchange. This contention, viewed in the light of the facts controlling, presents a serious question which appears to be one of first impression.

The position of respondent in respect to this further contention of petitioners is stated in the following excerpts from the brief:

"The facts clearly show that the partnership acquired not only stock in the successor corporation in exchange for the assets but also certain valuable rights under the promotion contract. * * *

"The seven oil companies transferred no property to the corporation upon which a gain or loss could arise. * * * Cash paid for stock is clearly not property within the contemplation of the statute."

■ The "valuable rights" which it is contended upon the part of respondent were acquired by petitioners in addition to stock was "the right to compel the oil companies to perform in accordance with their agreement." In view of the fact that the Commissioner determined the effective date of the organization of the corporation to be July 23, 1924, which finding was approved by the Board, and respondent's contention in respect thereto heretofore in this opinion has been sustained, no rights remained as against the oil companies. As before stated, the proceeding is to be viewed as a single transaction in which the parties to the agreement simultaneously performed their several obligations in respect thereto. In this view of the case petitioners must be regarded as making the transfer "solely in exchange for stock."

The provision of the statute in question does not expressly exclude money from consideration. The comprehensive word "property" is used. As said by the Supreme Court in Pirie v. Chicago T. & T. Co., 182 U. S. 438, 443, 21 S. Ct. 906, 908, 45 L. Ed. 1171: "* * * Money is certainly property, whether we regard any of its forms or any of its theories. * * *" See, also, 40 C. J. 1492; Fidelity & Deposit Co. of Maryland v. Arenz, 290 U. S. 66, 68, 54 S. Ct. 16, 78 L. Ed. 176.

■ While money is property in the broad sense of the term property, nevertheless the word "money" may be so used in a statute as to distinguish that type of property from other types. In several instances in said section 203, and in section 204 following (26 USCA §§ 934, 935 and note), the word "money" is used in distinction from other types of property. From section 204 we quote the following:

"§ 204. *Basis of determining gain or loss, and so forth.* (a) * * * (6) * * * If the property so acquired consisted in part of the type of property permitted by paragraph (1), (2), (3), or (4) of subdivision (b) of section 203 [section 934] to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it."

■ While in the quotation, supra, paragraph (4) of subdivision (b) of section 203 (26 USCA § 934 (b) is referred to as one of the paragraphs of the section permitting the acquiring of a certain "type of property," a comparison of paragraph (4) with said paragraphs (1), (2), and (3) will disclose that paragraph (4) is not limited or restricted as respects any particular type or types of property as is the case in said paragraphs (1), (2), and (3), and also paragraph (5). It would appear that an error may possibly have occurred in the preparation of the statute, and that paragraph (5) was intended to have been referred to instead of paragraph (4). At any event said paragraph (4) deals with the transfer

of "property * * * solely in exchange for stock or securities in such corporation," without any limitation as to type or types of property. The concluding sentence of the paragraph last quoted cannot be construed otherwise than inclusive of paragraph (b) (4) in its reference. In paragraph (a) (8) of section 204 of the act, 26 USCA § 935 (a) (8), however, there is found the expression "cases where part of the consideration * * * was property or money"—in reference to paragraph (b) (4). While the word "money" is there used in contradistinction to the word "property," it does not follow that it should be so considered in construing other sections or paragraphs of sections of the act where the word "property" alone is used. Said paragraph (8) in the expression referred to is dealing with a situation where the consideration for the transfer to the corporation "in addition to stock" was, as expressed, "property or money." While the said expression in paragraph (8) is "property or money," referring again to paragraph (6), § 204 of the act, 26 USCA § 935 (a) (6), we find the expression "properties (other than money) received." Paragraphs (7) and (8), § 204 of the act, 26 USCA § 935 (a) (7, 8), both begin: "If the property (other than stock or securities in a corporation a party to the reorganization) was acquired," etc. Here money is not mentioned among the exceptions. It is instructive to note that in said paragraph (6), we have the expression "properties (other than money)," and in paragraphs (7) and (8) "property (other than stock or securities * * *)," while in said paragraph (4) (b) of the preceding section the word "property" is used without qualification. In Regulations 65, Article 1572, dealing with said paragraph (b) (4), we find the following language: "(c) If property, real, personal, or mixed, is transferred to a corporation * * * by two or more persons, solely in exchange for stock. * * *"

As an aid to a correct interpretation of section 203 (b) (4) of the Revenue Act of 1924, which is but a re-enactment of section 202 (c) (3) of the Revenue Act of 1921 (42 Stat. 229), the briefs of the respective parties have referred to and quoted from the report of the Senate Finance Committee respecting the said act of 1921. From the portion of the Report appearing in the briefs we quote the following excerpts:

"Section 202 (subdivision c) provides new rules for those exchanges or 'trades' in which, although a technical 'gain' may be realized under the present law, the taxpayer actually realizes no cash profit.

"Under existing law 'when property is exchanged for other property, the property received in exchange shall, for the purpose of determining gain or loss, be treated as the equivalent of cash to the amount of its fair market value, if any. * * *' Probably no part of the present income tax law has been productive of so much uncertainty or has more seriously interfered with necessary business readjustments. The existing law makes a presumption in favor of taxation. The proposed act modifies that presumption by providing that in the case of an exchange of property for property no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value, and specifies in addition certain classes of exchanges on which no gain or loss is recognized even if the property received in exchange has a readily realizable market value. These classes comprise the cases * * * where an individual or individuals transfer property to a corporation and after such transfer are in control of such corporation."

Not only is the word "property" used in said paragraph (4) without qualification, but no apparent reason suggests itself why money paid for stock should not be considered property within the contemplation of that provision of the statute. The only reason offered why money should not be so considered is that where corporate stock is purchased for cash no gain or loss can be realized. Our attention is not called to any authority dealing with that question as it may be affected by a tax statute. It is a fact, however, that such a gain or loss may occur, depending upon the then or subsequent fair market value of the stock so purchased. In the instant case if the stock purchased by the oil companies for cash was not substantially in proportion to the stock issued for the properties conveyed by the partnership, a corresponding gain or loss would be occasioned. While no sound reason has been suggested why the word "property" as used in said paragraph (4) should not be construed as inclusive of money, we think there is an apparent reason why it should be construed as so inclusive. In addition to other capital assets, corporations engaged in business require money. In the instant case the partnership had developed a valuable business based largely upon the ownership

of a patented process for cementing oil wells. Their patrons necessarily included, doubtless largely, corporations engaged in the oil industry. Apparently there was a field open for the expansion of the business which required a larger money capital. Such expansion could be to the benefit of the oil industry generally, and the oil companies purchasing stock in particular, in the event the demand was in excess of the ability of the partnership as such to supply. We think it clear that the statute comprehends a situation such as presented in the instant case where certain persons transfer to a corporation certain property and property rights, other than money, while others transfer money only, and stock in the corporation is issued in exchange for such transfers.

The only question in a case of this character is whether the stock received by the several parties to the transaction is substantially in proportion to the value of the property respectively transferred. If petitioners received a greater proportion of stock than was justified by the then fair value of the property which they conveyed therefor, they would be liable for a tax upon the value of such excess portion.

Petitioner Erle P. Halliburton testified that this patent was worth $100,000 to $115,000, and an expert (an engineer in the employ of the corporation) placed the value at between $100,000 and $150,000 at the time it was transferred to the corporation. In the opinion of the Board appears the following statement:

"At July 1, 1924, the partnership had been so profitably engaged in the oil well cementing business for a number of years that the stock of the corporation formed to continue and expand its operations was readily salable at or above par. This indicates that the good will transferred to the corporation must have had a very substantial value. The petitioners, for obvious reasons, have adduced no evidence to establish such value. The license to use patent 1,011,484 and patent 1,486,883, must also have had some value since they are made the subject matter of several paragraphs of the promoter's agreement and are specifically assigned to the corporation."

Had the Commissioner and the Board not rejected the contention of petitioners that this case came within the provisions of section 203 (b) (4) of the Revenue Act of 1924, 26 USCA § 934 (b) (4), then of necessity the good will value and that of the licenses to use other patents would also become an important matter of consideration in determining the only question which might be involved; whether the stock received by the partnership, based on the value of the property conveyed therefor, was substantially in proportion to the stock received by the oil companies in consideration of money paid therefor.

Order reversed subject to right of consideration of the question whether the stock received by petitioners and the oil companies severally was substantially in proportion to their respective interests in the property prior to the exchange.