## CASE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8945.

Circuit Court of Appeals, Ninth Circuit.

April 14, 1939.

Ivan F. Phipps and Carl E. Davidson, both of Portland, Or., for petitioner.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch, F. E. Youngman, and Harry Marselli, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals, entered February 18, 1939, approving the determination of the respondent Commissioner of Internal Revenue of a $2,241.44 deficiency in petitioner's income tax for the year 1928 and a penalty of $560.36 for failure to file an income tax return for the same year.

On July 2, 1928, the taxpayer was the owner of 85 shares of the capital stock of Peckham-Case Company, a corporation engaged in the furniture and undertaking business with five stores located in Idaho. The remaining stock of said corporation, consisting of 103 shares, was owned by C. V. Peckham [3 of said 103 shares standing in the name of M. H. Eustace, an attorney, with beneficial ownership in Peckham]. On that date the taxpayer entered into an agreement with Peckham and Eustace whereby 85/188 of the assets of the Peckham-Case Company were to be transferred to a new corporation to be formed, in exchange for all the capital stock of such new corporation. The agreement further provided that thereafter the taxpayer was to exchange his 85 shares of Peckham-Case Company stock for all the stock of the new corporation.

Pursuant to said agreement a new corporation, called Case Furniture Company, was organized under the law of Idaho during the month of August, 1928. In the same month three of the five Peckham-Case Company stores with their stock in trade were turned over to the Case Furniture Company, in exchange for all of the stock of that company, consisting of 250 shares. These shares were issued in the name of the Peckham-Case Company. The transfer of the three stores and stock in trade to the Case Furniture Company was made subject to adjustments to equalize the interests of the stockholders. After this transaction, the taxpayer had charge of the three stores transferred to the Case Furniture Company, but conferred with Peckham regarding the policies of the company.

The taxpayer and Peckham did not meet in complete agreement upon a final adjustment as to a division of the accounts and notes receivable, and real estate owned by the Peckham-Case Company. The principal controversy was with respect to the valuation of certain real estate owned by the company. On December 1, 1931, the taxpayer and Peckham entered into a supplemental agreement designating Eustace to compose the differences and to "make final settlement and division of the assets" of Peckham-Case Company. On December 21, 1931, Peckham, Eustace and Case entered into a settlement agreement. Until that date the Peckham-Case Company held the stock of the Case Furniture Company which had been issued to it. Thereafter and during the same month, the taxpayer turned over to the Peckham-Case Company his 85 shares of the stock of that company, and received the 250 shares of the Case Furniture Company stock. The above indicates that neither Peckham nor Case was willing to perform the terms of the original contract until a final and complete understanding as to the division of the assets had been arrived at.

The Commissioner determined, and the Board of Tax Appeals approved his determination that the exchange of stock above related constituted a taxable gain to the taxpayer during 1928.

The taxpayer contends first that the exchange was an exchange of stock pursuant to a plan of reorganization and hence nontaxable; and, second, that assuming it was taxable, it was not a gain realized in 1928, since the actual stock certificates were not exchanged until 1931.

Section 115(c) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. § 115 note, provides: "(c) Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * *"

Subdivision (h) of the same section, 26 U.S.C.A. § 115(i), defines partial liquidation as follows: "As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

Section 112 (referred to in Section 115 (c) above quoted) is the section relating to reorganizations of corporations. Section 112(b) (3), 26 U.S.C.A. § 112(b) (3), provides that no gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

The Act defines "reorganization" as follows (Sec. 112(i) (1) (B), 26 U.S.C.A. § 112 note): " * * * (B) A transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred. * * *"

"Control" is defined in Section 112(j), 26 U.S.C.A. § 112(h), as follows: "As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

■ It is conceded that the stock of Case Furniture Company was received by taxpayer from the Peckham-Case Company in complete cancellation of his stock of that company, and hence falls within the definition of "partial liquidation" above quoted.

Therefore unless the transaction falls within the exception set forth in section 112 dealing with reorganizations, the gain is taxable.

As can be seen from the sections above quoted, in order to come within the exemption, it must appear (1) that there was in fact a reorganization as defined in the statute, (2) that the Peckham-Case Company and the Case Furniture Company were both "parties to the reorganization", and (3) that the exchange of stock by the taxpayer was "in pursuance of the plan of reorganization".

The taxpayer argues that there has been a literal compliance with the statute defining reorganization, that is, that there was a transfer by the Peckham-Case Company of a part of its assets to the Case Furniture Company, and "immediately after" the transfer the transferor Peckham-Case Company was "in control" of the Case Furniture Company, owning all of the stock thereof. In other words, he is arguing in effect that his tax liability from the transfers should be determined by treating each step as a separate transaction, instead of parts of a single transaction. He treats the first step, the exchange of stock of Case Furniture Company for the assets of Peckham-Case Company, as a reorganization, and then treats the second step as an exchange by taxpayer of stocks of two corporations, both parties to the reorganization. It should be noted, however, that to be a non-taxable exchange, the exchange of stocks of corporations parties to a reorganization must also be "pursuant to the plan of reorganization". The taxpayer by contending that the exchange comes within the terms of the Act of necessity contends that the entire transaction must be considered together. He cannot in one breath state that the entire transaction must be viewed together for this purpose, and then in the next breath state that the transaction between the two corporations should be viewed separate from the exchange of stock certificates, in order to find a "reorganization".

In the case of Commissioner of Internal Revenue v. Schumacher Wall Board Corporation, 9 Cir., 1937, 93 F.2d 79, 81, this court held that the question of control is to be determined by the situation existing at the time of the completion of the plan rather than at the time of the fulfillment of one of the intermediate steps. In that connection, we said: "The statute is obviously intended to reach those cases where unfettered substantial control of a corporation survives a reorganization, regardless of subsequent disposition of that control. We do not believe it was intended to apply to a situation where there is a binding contract simultaneously performed, by which the stock merely passes through intermediate holders to those to whom the contract compels immediate delivery".

In the case of Halliburton v. Commissioner, 9 Cir. 1935, 78 F.2d 265, 267, the two taxpayers were sole members of a partnership engaging in oil well cementing. They entered into a contract with certain oil well companies, providing for the formation of a new corporation to take over the assets and business of the partnership. The new corporation was to have an authorized capital stock of 3,500 shares, of which the taxpayers were to have 1,780 shares in exchange for the partnership assets, and the oil companies were to have 1,300 shares, to be paid for in cash. The partners first turned over their assets to the corporation in exchange for the 1,780 shares. It was not until 22 days later that the oil companies paid for and received their 1,300 shares. During the interim the taxpayer held all the outstanding stock of the new corporation. The contention was made that this was a tax free transfer, on the ground that the partners were owners of over 80% of the capital stock of the new corporation immediately after the transfer. We held that notwithstanding this ownership, the pre-existing contractual arrangement negatived the proposition that an 80% interest or control remained in the transferor taxpayers.

In the instant case it is admitted by petitioner that the real object of the agreement was to separate his interest in the Peckham-Case Company, including both the physical properties and the corporate stock, from such company. That purpose was not accomplished until the exchange by taxpayer of his Peckham-Case Company shares for Case Furniture Company shares. For income tax purposes, the entire proceeding must be viewed as a single transaction. Substance and not form controls in applying a tax statute. United States v. Phellis, 257 U.S. 156, 168, 42 S. Ct. 63, 66 L.Ed. 180.

Looking at the situation as it existed at the consummation of the plan, 80% of

the stock of the Case Furniture Company was not owned by the transferor of the assets, or its stockholders. All of the stock was owned by taxpayer, individually. Hence the transaction does not fall within the definition of "reorganization" in the Statute, and it therefore follows that the profit from the exchange of stock was taxable.

We next come to the contention made by the taxpayer that even assuming that the gain from the exchange in question is taxable, it is not taxable in the year 1928. It is elemental in income tax law that a gain is not taxable until it is realized. The argument of the taxpayer is that he realized no gain in 1928, since the actual stock certificates were not exchanged until 1931.

The Board of Tax Appeals based its decision that the gain was realized in 1928 on the fact that the taxpayer had a specifically enforceable contract in that year under which he could have compelled the Peckham-Case Company to turn over the Case Furniture Company stock to him. It is argued that during 1928 the Case Furniture Company took at least equitable title to 85/188 of the assets of the Peckham-Case Company assets, and that in the same year the Peckham-Case Company received legal title to the Case Furniture Company stock. Under the contract of July 2, 1928, it was provided that the Case Furniture Company stock was to be issued to the Peckham-Case Company, or its order, "whereupon said Peckham-Case Company shall transfer to said Paul L. Case the capital stock in such new corporation in exchange for the eighty-five (85) shares of stock held by said Paul L. Case in the Peckham-Case Company." It is therefore argued that the taxpayer owned the beneficial interest in the Case Furniture Company stock, and that the fact that the stock certificates did not pass between him and the Peckham-Case Company until 1931 is not controlling. The decision of the Board of Tax Appeals then states, "A stock certificate is not stock, and he [taxpayer] was, by contract with the old stockholders of Peckham Co. and with both corporations, the stockholder owning the stock in the Case Furniture Co., even though stock certificates had not yet reached him." The Board of Tax Appeals cites in support of this proposition, the case of Commissioner v. Scatena, 9 Cir., 85 F.2d 729, decided by this court.

From an examination of the cited case, we do not think it is controlling in the instant case. There the court was concerned with a stock dividend declared on stock owned by the taxpayer. The stock dividend had been declared in September, 1928. In October, 1928, the corporation made bookkeeping entries to write off the distributable shares. In November, 1928, the corporation delivered the shares to its transfer agent. The Court held that in the circumstances the stock dividend became unqualifiedly subject to the demand of the taxpayer during the calendar year 1928, and that the fact that the actual stock certificate was not received until 1929 was immaterial, since the taxpayer could be a shareholder without ever having received a certificate. In our discussion of the facts we said (85 F.2d page 731): "Thus by November 1, 1928 [when the stock was delivered to the transfer agent], the stock was out of the hands of the corporations declaring the dividend, and they no longer had possession of the certificates of stock representing the dividend. How soon the stockholders entitled to the dividend would receive the certificates depended upon the speed with which the transfer agent worked." And, again, (85 F.2d page 732): "The declaring corporations had done all that it was possible for them to do to transfer title to the shares to the stockholders." In other words, we held that the stock was constructively received by the taxpayer during the year 1928.

Other cases cited by the Respondent in its brief have to do with constructive receipt of income by a taxpayer. In United States v. Hendler, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018, the transferee corporation assumed the liabilities of its transferor, and the transferor was held liable for a tax thereon. In Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, the Supreme Court held that the grantor of a trust was liable for tax upon the income of the trust, although it was paid to his wife under a divorce agreement. In Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918, the court held an employee liable for tax upon amounts used by his employer to discharge such employee's income tax. These are all cases involving money paid to discharge a debt of the taxpayer instead of being paid directly to the taxpayer. There the courts have uniformly held that it is a constructive receipt by the taxpayer. That is not the situation involved in this case, however. Here the most that the taxpayer

had was a right to demand performance of the contract with the Peckham-Case Company. The stockholders of Peckham-Case Company obligated themselves by the agreement of July 2, 1928, to organize a new corporation, and to transfer to the new corporation 85/188 of the assets of Peckham-Case Company in exchange for all the capital stock of the new corporation. This part of the agreement was performed. The agreement further provided that the Peckham-Case Company would transfer to the taxpayer the stock of the new corporation received by it in exchange for the transfer of said assets in full payment for the stock of the Peckham-Case Company owned by the taxpayer. This part of the agreement was not performed during the year 1928. We do not think it can properly be said that there was a constructive receipt by the taxpayer of the Case Furniture Company stock during that year. It should be remembered that the taxpayer is being taxed on the exchange of his Peckham-Case Company stock for stock of the new corporation, Case Furniture Company. We have held that this is in the nature of a distribution in partial liquidation of Peckham-Case Company. However, the fact that Peckham-Case Company may have been obligated to make this exchange does not mean that at that point it was taxable to the taxpayer. This is not a case where the corporation declaring a dividend has during the year in question set it apart for the taxpayer and has "done all that it was possible for them to do to transfer title to the shares to the stockholders." Commissioner v. Scatena, supra. The Peckham-Case Company during 1928 took no action whatever toward transferring the Case Furniture Company stock to the taxpayer. All that it did in that year was to transfer assets belonging to the corporation to the Case Furniture Company in exchange for stock of that company, in pursuance of the agreement. We do not think that this transaction amounted to a constructive delivery to the taxpayer of the Case Furniture Company stock, as found by the Board of Tax Appeals. As we have stated above, all that the taxpayer had at this point was an enforceable contract with the Peckham-Case Company whereby he could compel that company to deliver to him the Case Furniture Company stock, upon performance by the taxpayer of his part of the contract, namely, delivery to the Peckham-Case Company of his 85 shares of stock of that company. [At this point it should be noted that the agreement of July 2, 1928 was not entered into by the Peckham-Case Company, but by the stockholders of that company. It might well be argued that the taxpayer did not even have an enforceable contract with the Company. However, the petitioner and the respondent have in their briefs before this court treated the contract as binding on the Peckham-Case Company, and we have so treated it in this opinion.]

There is nothing in the record to indicate whether the taxpayer kept his books on the cash or accrual basis. However, even assuming that they were kept on the accrual basis, we do not feel that the gain was taxable in 1928. In the case of Lucas v. North Texas Lumber Co., 281 U.S. 11, 12, 50 S.Ct. 184, 74 L.Ed. 668, the Supreme Court was concerned with an executory contract of sale of property. Under the terms of the contract the purchaser was to close the transaction and pay the purchase price "as soon as the papers were prepared". The respondent did not prepare the papers necessary to effect the transfer or make tender of title or possession or demand the purchase price until the following year [the contract was made in December of the year in question]. The Supreme Court held that even though the taxpayer kept his books on an accrual basis, the profit was not taxable in the year the contract was made, because unconditional liability of the vendee for the purchase price was not created in that year.

Reversed.