HAWAIIAN FREIGHT FORWARDERS, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19283.    Promulgated July 31, 1950.

*Louis Janin, Esq.*, for the petitioner.
*W. J. McFarland, Esq.*, for the respondent.

### OPINION.

TURNER, *Judge:* The respondent determined deficiencies in excess profits tax against the petitioner for the fiscal years ended November 30, 1943, and November 30, 1944, in the amounts of $21,424.70 and $7,403.23. The question is whether or not the respondent erred in determining petitioner's excess profits credit on the basis of invested capital under section 714 of the Internal Revenue Code rather than upon the basis of income under section 713 of the Code. The answer to that question in turn depends upon the determination whether petitioner was or was not an acquiring corporation under the provisions of section 740 (a) (1) (D) of the Code.

The facts have been stipulated and as stipulated are so found.

The petitioner is a corporation organized under the laws of the Territory of Hawaii on March 13 or 14, 1940. It filed its returns for the taxable years here in question with the collector of internal revenue for the Territory of Hawaii.

It is the claim of petitioner that it acquired, in the manner prescribed in section 740 (a) (1) (D),[1] substantially all of the properties of Hawaiian Freight Association, a partnership. The partnership had previously succeeded to the business and assets of Hawaiian Freight Association, Ltd., an Hawaiian corporation which had been organized on March 6, 1933, to engage in the freight forwarding business. The corporation was liquidated and dissolved on or about December 31, 1936, at which time its 67 shares of outstanding stock were owned 33 by Leffel, 24 by Ballentyne and 10 by Schnack. Upon liquidation its business and assets were distributed to its shareholders, who on January 2, 1937, two days later, organized the partnership, Hawaiian Freight Association, to which they transferred the freight forwarding business. Their partnership interests were in the same proportions as the corporate stock had been owned. This partnership operation continued through 1937, 1938, 1939, and into 1940.

At some time prior to March 8, 1940, an arrangement and understanding was reached whereby the business of Hawaiian Freight Association, the partnership, would be acquired by a new corporation to be formed with Leffel, Ballentyne and Oahu Railway and Land Company as equal shareholders. Schnack was not included in the plans for the new corporation.

In steps taken to effectuate the above understanding an agreement was entered into on March 8, 1940, between Schnack on the one hand and Leffel and Ballentyne on the other, whereby it was agreed that Schnack would receive from the partnership, as his interest therein, the sum of $8,000 and that he would release unto Leffel and Ballentyne any and all interest he might have in and to the remaining property and assets, tangible and intangible, including good will. Leffel and Ballentyne agreed to indemnify Schnack and save him harmless from any loss, damage or liability by reason of his having been a member of the partnership. The agreement disclosed that on the basis of an audit of the partnership's affairs for the period ending December 31, 1939, Schnack's interest in the assets and business was shown as $5,296.74 and further that his share of profits for the period from December 31, 1939, to March 8, was $2,703.06. It was agreed that $8,000, the total in round figures of the two amounts stated, repre-

---

[1] SEC. 740. DEFINITIONS.

  (a) ACQUIRING CORPORATION.—The term "acquiring corporation" means—

  (1) A corporation which has acquired—

     *        *        *        *        *        *        *

  (D) substantially all the properties of a partnership in an exchange to which section 112 (b) (5), or so much of section 112 (c) or (e) as refers to section 112 (b) (5), or to which a corresponding provision of a prior revenue law, is or was applicable.

sented Schnack's interest in the good will and other assets of the partnership plus his share of the earnings after December 31, 1939.[2]

The capital of the petitioner when organized was fixed at $120,000 divided into 6,000 shares. After the above payment to Schnack, the petitioner in exchange for its 6,000 shares of stock received the going business of Hawaiian Freight Association and most, if not all, of its remaining assets. , The assets so acquired are listed in the stipulation as follows:

| | |
|---|---|
| Cash | $19, 237. 07 |
| Receivables | 9, 151. 08 |
| Furniture and Fixtures | 1, 341. 86 |
| Stationery and Supplies | 269. 99 |
| Good Will | [3] 90, 000. 00 |
| | $120, 000. 00 |

The stock issued in exchange for the said properties was issued 2,999 shares to Leffel, 2,998 to Ballentyne, and 3 to others as their nominees.

The issuance of petitioner's six thousand shares of stock for the above assets of Hawaiian Freight Association was approved at an adjourned meeting of petitioner's stockholders held on March 19, 1940. It was not possible to make immediate transfer of all of the partnership assets which were to be received by petitioner for the reason that the great bulk of the freight forwarding business was between Honolulu and Chicago, and it required approximately three weeks to complete all operations on all of the business which had already been initiated. All transfers had been made by April 1, 1940, and the change of operations to petitioner was fully effected by that date.

On July 2, 1940, a statement of dissolution of the Hawaiian Freight Association, dated June 26, 1940, was filed in the office of the Treasurer of the Territory of Hawaii. The statement of dissolution showed Leffel, Ballentyne and Schnack as the partners and recited that the

---

[2] The parties have stipulated that according to the books, and as disclosed by the audit report of a firm of certified public accountants. the balances in the accounts of the partners as of December 31, 1939 were: Leffel $17,244.81, Ballentyne $11,386.31, and Schnack $5,296.74. A breakdown of these amounts between the original contributions of partnership's capital and the balance of undrawn profits would show the following:

| | | |
|---|---|---|
| Leffel | Capital | $8,366.42—49.26 per cent. |
| | Undrawn Profits | 8,878.39. |
| Ballentyne | Capital | 6,083.67—35.82 per cent. |
| | Undrawn Profits | 5,302.64. |
| Schnack | Capital | 2,534.05—14.92 per cent. |
| | Undrawn Profits | 2,762.71. |

The stipulation also shows that the net income of the partnership for the period from January 1, 1940 to March 31, 1940 was $27,662.94.

[3] The stipulation gives no explanation of the wide margin of difference between the allowance therefor to Schnack under the March 8 agreement and the $90,000 at which it was carried into petitioner's books.

partnership was dissolved on March 14, 1940. The said statement was executed by A. G. Schnack and G. C. Ballentyne.

Under section 740 (a) (1) (D) a corporation is to be regarded as an acquiring corporation and as such is entitled to utilize the base period earnings of its predecessor in computing its excess profit credit if it has acquired "substantially all of the properties of a partnership in an exchange to which section 112 (b) (5) * * * is or was applicable." By the applicable provisions of section 112 (b) (5) it is provided:

No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *

The parties have devoted much of their briefs to arguments whether the withdrawal of Schnack effected a termination or dissolution of the partnership Hawaiian Freight Association or whether as in this case, there being no provision in the partnership agreement specifically providing that the withdrawal of a partner should not terminate the partnership, the partnership did continue by operation of Hawaiian law with Leffel and Ballentyne as the partners during the period from March 8, the date of the agreement covering the withdrawal of Schnack, to April 30 when the transfer of the business to petitioner was finally and fully completed.

It is not necessary in our opinion to take up and discuss the arguments so made since here the facts and the applicable provisions of the statute never permit us to reach a point where such arguments might be material. Regardless of whether the partnership agreement did or did not contain a provision for continuation of the partnership upon the withdrawal of one of the parties, and regardless of whether under the laws of Hawaii a partnership may be said to continue upon the withdrawal of a partner where as here, there is no prior agreement for continuation, the facts present render these considerations immaterial. Here there was no intention on the part of anyone that the partnership should continue. The agreement in substance was that subject to Schnack's withdrawal the petitioner would be organized to take over the business and most, if not all, of the remaining assets of the partnership, Hawaiian Freight Association. Just when Schnack took down his share is not known, but within five or six days of the agreement fixing the terms of his withdrawal petitioner was formed and the stipulated facts definitely show that the necessary steps to move to petitioner the business and that part of the assets it did acquire began immediately, even though the three weeks required to com-

plete all business which had already been initiated and was then in process did not permit completion of the transfer until April 1, three weeks and one day after the effective date of Schnack's withdrawal. While the record is not specific on the point, presumably all business initiated after March 8 and completed after April 1, was regarded as the business of the petitioner, although as hereafter shown in applying the statute it is really of little moment whether that was or not strictly the case. In any event any and all operations in the interval were transitional and were handled as they were merely as an expedient and an incident to the acquisition by petitioner of the partnership business and that part of the partnership assets agreed upon. We have no occasion, therefore, to concern ourselves with the law of Hawaii as to the continuation of a partnership after the withdrawal of a partner since for the purposes here we have no such case. Cf. *Ransohoffs, Inc.*, 9 T. C. 376.

Our question accordingly is whether or not petitioner did acquire within the meaning of section 740 (a) (1) (D) substantially all of the properties of Hawaiian Freight Association, the partnership which was organized on January 2, 1937, and which continued to the time when the agreements and understandings were reached under which the withdrawal of Schnack and his interests therein and the acquisition by petitioner of the partnership business and most, if not all, of the remaining assets were effected. If the transaction in question is to meet the requirements of the statute, it is necessary, first, that pursuant to the provisions of section 740 (a) (1) (D) petitioner did acquire substantially all of the properties of that partnership and, second, that the acquisition was in an exchange to which section 112 (b) (5) of the Code was applicable. To be within section 112 (b) (5) the exchange must have been solely for stock or securities of petitioner, the acquiring corporation, and after the exchange the persons making the exchange must have been in control of petitioner, and not only that but the stock received by each such person must have been substantially in the same proportion as his interest in the property prior to the exchange.

According to the stipulation the petitioner received for its stock the freight forwarding business, including good will, and up to $30,000 of other partnership assets. Good will was listed at $90,000 while the other assets, including cash, receivables, furniture and fixtures, and stationery and supplies were listed at $30,000.[4] There is nothing showing that good will was ever carried on the books of the partnership in any amount. Beyond the figures at which the above

---

[4] As to the $30,000, the parties stipulated as follows:

\* \* \* \* \* \* \*

Approximately $30,000.00 of capital was required by the petitioner for its operations.

\* \* \* \* \* \* \*

items were transferred to petitioner we have no information as to the properties of the partnership or their value except such information as may be reflected by the individual accounts of the partners and by the Schnack agreement of March 8. We do know that Schnack withdrew as his share and interest in the partnership $8,000 net, which amount covered his original contribution to partnership capital and his pro rata part of the undrawn profits up to March 8. We know also that on January 1, 1940, Leffel's account showed a balance of $17,244.81 and Ballentyne's account a balance of $11,386.31, which amounts covered their original contributions to partnership capital and their shares of the undrawn profits at December 31, 1939. It is stipulated that the net income of the partnership for the period from January 1, 1940, to March 31, 1940, was $27,662.94. Except for Schnack's withdrawal of $8,000 as representing his interest in good will and other partnership assets plus his pro rata share of the 1940 profits to March 8, the record is silent as to withdrawals by any of the three partners. Inasmuch, however, as petitioner received only $30,000 of the partnership assets, exclusive of good will, it would appear that withdrawals were made by Leffel and Ballentyne in unknown amounts and proportions. There is no contention, however, that such withdrawals as were made were not in keeping with the pro rata interests of the two individuals in the partnership as they originally existed, due effect being given to the withdrawal by Schnack of his interest.

From the above we think it clear that it may not be said that petitioner acquired substantially all of the assets of the Hawaiian Freight Association in exchange for its stock and accordingly it does not meet the test of section 740 (a) (1) (D), *supra.* *Renfro Drug Co.*, 11 T. C. 994. Furthermore, due to the variance between the interests of Leffel and Ballentyne in the partnership it may not be said that the receipt by them on a 50-50 basis of the shares of the petitioner in exchange for the partnership assets represented a receipt by each of them of the said shares "substantially in proportion to his interest in the property prior to the exchange" so as to make the exchange an exchange to which section 112 (b) (5) was applicable. See *Renfro Drug Co., supra.*

The record is silent as to whether or not Oahu Railway and Land Company became an equal shareholder with Leffel and Ballentyne. Due to the fact that corporate returns subsequently filed by petitioner listed the interests of Leffel and Ballentyne as being 33⅓ per cent each it may be presumed that Oahu did subsequently become the owner of one-third of the shares of petitioner. Regardless, however, of whether it did or did not, the determination in this case must turn and does turn, as previously stated, on the exchange between Ballentyne and Leffel on the one hand and the petitioner on the other, and if Oahu did

become a stockholder at a later time presumably it did so by acquiring from the two individuals portions of their shares.

Since the issue to be decided has been decided for the reasons set out above, it becomes unnecessary to consider various alternative issues or to determine whether or not the petitioner properly filed an election necessary to make the Amendment by the Revenue Act of 1942 to Supplement A of the Excess Profits Tax Title of the Internal Revenue Code applicable to its case.

It not being clear whether decision of the issue presented by the parties and decided herein for the respondent is basis for entry of decision for the respondent without computation by the parties.

*Decision will be entered under Rule 50.*