## J. M. TURNER AND COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51719.   Filed June 29, 1956.

*Fortescue W. Hopkins, Esq.*, for the petitioner.
*Elmer E. Lyon, Esq.*, for the respondent.

OPINION.

PIERCE, *Judge:* The petitioner contends that, in computing its excess profits credit for the year 1951, it is entitled to use the base period experience of the business operated by J. M. Turner as a sole proprietor, on the ground that it is either an "acquiring corporation" or a "purchasing corporation," within the meaning of sections 461 (a) and 474 (a), respectively, of the Internal Revenue Code (1939).[4]

---

[4] SEC. 461. DEFINITIONS.
For the purposes of this Part—
(a) ACQUIRING CORPORATION.—The term "acquiring corporation" means—
(1) A corporation which has acquired—
　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

At the outset, it will be observed that one of the essential pre-requisites to qualification of the petitioner under section 461 (a) or 474 (a), is that petitioner must have acquired "substantially all the properties" of Turner's proprietorship. Section 474 (a) limits the word "properties" as used therein, by the parenthetical phrase "(other than cash)"; whereas in section 461 (a), the word "properties" is not so limited, and is therefore construed to include both "cash" and other properties. Cf. *Halliburton* v. *Commissioner*, (C. A. 9) 78 F. 2d 265. Whether the properties transferred constitute "substantially all" is a matter to be determined from a consideration of all the facts and circumstances, rather than by the application of any particular percentage. *Milton Smith*, 34 B. T. A. 702, 705.

It is our opinion that petitioner did not acquire "substantially all the properties" of Turner's proprietorship, irrespective of whether cash is included or excluded from consideration. As regards the cash assets of the proprietorship, the only cash which the corporation received from Turner was that delivered in payment for the shares of stock which were issued at par, pursuant to direction of petitioner's board of directors. The identity of the account or source of funds from which Turner obtained this cash is not shown; and,

---

(D) substantially all the properties of a partnership in an exchange to which section 112 (b) (5), or so much of section 112 (c) or (e) as refers to section 112 (b) (5) is applicable.

\* \* \* \* \* \* \*

(b) COMPONENT CORPORATION.—The term "component corporation" means—

\* \* \* \* \* \* \*

(5) In the case of a transaction specified in subsection (a) (1) (D), the partnership whose properties were acquired.

\* \* \* \* \* \* \*

(f) SOLE PROPRIETORSHIP.—For the purposes of sections 461 (a) (1) (D), 461 (b) (5), and 462 (k), a business owned by a sole proprietorship shall be considered a partnership.

SEC. 474. EXCESS PROFITS CREDIT BASED ON INCOME—CERTAIN TAXABLE ACQUISITIONS.

(a) DEFINITIONS.—For the purpose of this part—

(1) PURCHASING CORPORATION.—The term "purchasing corporation" means a corporation which, before December 1, 1950, acquired—

(A) In a transaction other than a transaction described in section 461 (a), substantially all of the properties (other than cash) of another corporation, of a partnership, or of a business owned by a sole proprietorship;

\* \* \* \* \* \*

(2) SELLING CORPORATION.—The term "selling corporation" means a corporation, a partnership, or a business owned by a sole proprietorship, as the case may be, properties of which were acquired by a purchasing corporation in a transaction described in paragraph (1).

(3) PART IV TRANSACTION.—The term "part IV transaction" means a transaction described in paragraph (1).

\* \* \* \* \* \* \*

(c) LIMITATIONS.—This part shall apply only if each of the following conditions is satisfied:

(1) The selling corporation (A) did not, after the part IV transaction (or the last transaction described in subsection (a) (1) (B)), continue any business activities other than those incident to its complete liquidation, and (B) within a reasonable time after ceasing business activities, completely liquidated in a transaction other than a transaction described in section 461 (a), and ceased existence.

accordingly, the evidence does not establish what portion, if any, of the cash assets of the proprietorship (as distinguished from Turner's personal cash) was acquired by petitioner.

As regards physical assets, our Findings of Fact show that on December 31, 1949, the total book value of all such assets carried on the books of the proprietorship was $12,423.06; that of these, only a portion, having a book value of $3,214.56, was acquired by petitioner, whereas the remainder (including a power saw, a cement mixer, and a valuable power shovel), having a book value of $9,208.50, was retained in the proprietorship. Although Turner claimed that miscellaneous other physical assets having a value of approximately $6,000 were transferred, there is no record of their transfer; and the books of neither petitioner nor the proprietorship reflect them. Turner testified also that the aggregate fair market value of the physical assets of the proprietorship exceeded their book value; but the evidence contains neither an appraisal nor a sufficient description of the condition of such assets, to permit a determination of their fair market value. In this situation, we have no alternative to the use of book values. *E. T. Renfro Drug Co.*, 11 T. C. 994; *Hawaiian Freight Forwarders, Ltd.*, 15 T. C. 35.

As regards contracts in process of completion on December 31, 1949, there were 14 of them held by the proprietorship; and these were its most important and valuable asset. Only 2 of these contracts were acquired by petitioner; whereas the other 12 were retained in the proprietorship. These contracts represented large potential profits, and the expenditure of substantial amounts for planning, labor, and materials. Upon completion of the 12 retained contracts, the proprietorship realized gross profits of $82,445.08, and net profits of $59,185.10; but no portion of such profits, either before or after taxes, was acquired by petitioner.

The proprietorship also had certain miscellaneous assets on December 31, 1949, including notes and accounts receivable, which had an aggregate value of $5,496.52; but no portion of such assets was acquired by petitioner.

Turner testified that petitioner acquired goodwill of the proprietorship; and he estimated that this had a value of $350,000. There is no indication, either in the minutes of petitioner's board of directors or on the books of either petitioner or the proprietorship, of any such goodwill having been transferred, acquired, or held. To the contrary, there is evidence that the proprietorship had operated under Turner's name prior to the transactions here involved; that it continued to operate under such name in completing the 12 contracts which it retained; and that, after a lapse of about 1 year, it resumed operations under such name, in bidding for and performing 5 new contracts in 1951 and 1952. Also, Turner did not report, in his 1950

income tax return, the sale of any goodwill of the proprietorship, which presumably would have had a zero basis. The mere fact that Turner organized a corporation bearing his name, and became the president thereof, is not sufficient to establish the sale or transfer of any goodwill from his proprietorship to petitioner. Moreover, there is no indication as to how Turner determined the $350,000 value which he used; and we regard such value to be unsupported, unproved, and unacceptable.

Finally, the only liabilities of the proprietorship shown on its books as of December 31, 1949, were withholding taxes and old age benefit deductions, in the aggregate amount of $2,573.39; and none of these was assumed by petitioner. It is argued by petitioner, however, that the amount of these liabilities should be increased by those portions of Turner's individual income tax liabilities for the years 1949 and 1950, which were attributable to the proprietorship profits of those years; and that such increased amount of liabilities should be offset against the value of the proprietorship assets which petitioner did not acquire. But, if such individual income tax liabilities are to be attributed to the proprietorship, then consistently, the net profits of the business for 1949 and 1950 (represented by cash and work in process, totaling $133,090.19), to which such taxes are attributable, should be regarded as assets of the proprietorship. And, if such profits are added to the assets of the proprietorship, it becomes even more apparent that petitioner did not acquire "substantially all the properties" of the proprietorship.

We think that the foregoing facts and conclusions are sufficient, in themselves, to establish that petitioner does not qualify, either as an "acquiring corporation" or as a "purchasing corporation," within the meaning of the applicable statutes. But there are still other reasons for denying such qualification.

As before stated, section 461 (a) is applicable only to acquisitions of property through transactions which qualify as nontaxable exchanges under section 112 (b) (5) and its related sections. Here, petitioner did not acquire either cash or property in any transaction which falls within the ambit of these sections. The books and records of petitioner, and also the minutes of the first meeting of its board of directors, clearly establish that all of petitioner's stock was issued solely for cash at par; and there is no showing that any of this cash represented an asset of the proprietorship. Also, both of the two transferred contracts in process, and all of the other transferred assets, were purchased by petitioner for specific prices; and these prices were thereafter evidenced by the setting up of an account payable on the books of the petitioner and an account receivable on the books of the proprietorship. It may well be, as suggested in peti-

tioner's brief, that Turner did not anticipate the enactment of the Excess Profits Tax Act of 1950; and it is possible that, if he had anticipated such statute, he might have cast the transactions differently. But, in deciding the present controversy, it is necessary for us to deal with the facts and transactions as they actually existed.

With further regard to section 474 (a), its application is expressly limited to situations (1) where the seller did not continue any business activities, other than those incident to "complete liquidation"; and (2) where the seller, within a reasonable time thereafter, "ceased existence." Here, Turner's proprietorship not only continued active operations under the 12 contracts that it retained (which, in itself, might well be regarded as something more than mere liquidation activity); but also, it thereafter held and rented certain of the retained construction equipment; continued to carry a depreciation account at the end of the year 1950; and, beginning in about May 1951, bid for and performed work on 5 new contracts in 1951 and 1952. One of these new contracts, alone, produced receipts of $205,961.57 and gross profit of $21,299.12. So far as here shown, there was no agreement with the petitioner or anyone else, which would have prevented the proprietorship from operating continuously after 1949. Indeed, there is no evidence that the books of the proprietorship were ever closed, or that the proprietorship ever "ceased existence." The indication, to the contrary, is that there was merely a segregation of part of Turner's business assets, including only 2 of his contracts, in the petitioner corporation.

We decide the issue here involved in favor of the respondent.

*Decision will be entered under Rule 50.*