## WYOMING INV. CO., LIMITED, v. COMMISSIONER OF INTERNAL REVENUE.
### No. 917.

Circuit Court of Appeals, Tenth Circuit.
March 26, 1934.

J. Robert Sherrod, of Washington, D. C. (John C. Ristine and Miller & Chevalier, all of Washington, D. C., on the brief), for petitioner.

John G. Remey, Sp. Asst. Atty. Gen. (Sewell Key, Sp. Asst. Atty. Gen., on the brief), for respondent.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals involving income tax liability of the Wyoming Investment Company for the year 1927.

The Investment Company filed a return for the year 1926 in which it reported a net operating loss of $38,327.28. A consolidated return was filed for the year 1927 by the Investment Company and its subsidiary the Sun Sand Company, in which a net income of $3,825.13 was reported. In this consolidated return $64,200 was deducted from gross income as a loss alleged to have been sustained by reason of the determination of the worthlessness in 1927 of certain shares of capital stock of the Tampa Developers, Inc. (hereinafter called the Tampa Company), owned by the Investment Company. The Commissioner disallowed the loss for 1927 and allowed it as a deduction for 1926. The loss in 1926 has not been allowed as a credit against the consolidated net income for 1927, under section 206 of the Revenue Act of 1926 (26 USCA § 937).

The consolidated net income for 1927 was increased by $64,200, and upon this revised net income the Commissioner computed a total tax liability of $9,045.82, of which amount $5,133.81 was allocated to the Investment Company.

The Commissioner's sixty-day letter to the Investment Company reads as follows:

"The question at issue is whether the loss of $64,200.00 representing the investment in stock of the Tampa Company, was sustained by the Wyoming Investment Company in 1926 or 1927.

"This office is of the opinion that the loss was sustained during the year 1926 for the following reasons. * * *

"3. While the bulk of the property was disposed of in 1927 and complete liquidation has not taken place as yet, any value attributable to the stock was lost by the development in the year 1926."

Counsel for the Investment Company, in his opening statement before the Board, stated that the principal issue involved was the determination of the year in which the stock loss occurred, that the Investment Company claimed it occurred in 1927 and the Commissioner contended it occurred in 1926. Counsel for the Commissioner concurred in this statement of the issue. Thereupon the Board member conducting the hearing said, "The issue is drawn as to whether the loss occurred in 1926 or 1927."

But that was not the issue before the Board. The Investment Company in its 1927 consolidated return claimed a deduction of $64,200 on account of such stock loss. The Commissioner had disallowed a deduction of such loss in 1927. The Investment Company had petitioned the Board to redetermine its 1927 income tax and allow such loss as a deduction in 1927. The issue before the Board therefore was whether the loss occurred in 1927. The tax determination of the Commissioner for 1927 was prima facie correct, and the burden was upon the Investment Company to establish by substantial evidence that the loss claimed as a deduction occurred in 1927. O'Meara v. Commissioner (C. C. A. 10) 34 F.(2d) 390; Gloyd v. Commissioner (C. C. A. 8) 63 F.(2d) 649; Burnet v. Petroleum Exploration (C. C. A. 4) 61 F.(2d) 273, certiorari denied 287 U. S. 592, 53 S. Ct. 121, 77 L. Ed. 516.

The Board found that the Investment Company had failed to establish that the stock of the Tampa Company was worthless in 1927, and sustained the determination of the Commissioner.

This appeal presents two principal questions: (1) Did the Investment Company sustain the burden of establishing that the loss occurred in 1927, and (2), if it did not, should the case be remanded for rehearing to give the Investment Company an opportunity to produce additional evidence of the worthlessness of the stock in 1927, in view of the admission of the Commissioner that the loss occurred in 1926 and the erroneous statement of the issue.

The evidence established these facts: The Tampa Company was incorporated under the laws of Florida in 1925 to engage in the development and sale of real estate. In 1925 it purchased a number of tracts of real estate at Tampa, Florida, at a cost of ap-

proximately $2,100,000. The land was favorably located and well drained. Much of it was encumbered by liens securing deferred payments on the purchase price. The Tampa Company proceeded to subdivide, improve, and make sales of its holdings. A substantial number of lots was sold in 1925 and 1926.

As a part of its development program, the Tampa Company and the City of Tampa agreed to construct jointly a bridge across the Hillsboro River at a cost of $420,000. The bridge made the property of the Tampa Company more accessible to the city proper, and it was thought that it would materially enhance the value of its holdings. The city defaulted in its payment on the bridge in 1926, and the bridge contractor refused to complete his contract without further security. Thereupon the Tampa Company gave the contractor a mortgage on its Michigan Park Addition to secure payment of $45,000 of the contract price.

In the spring of 1926 the Tampa Company found itself in financial difficulties due to the fact that the bridge had not been completed and sufficient amounts could not be realized from sales to discharge maturing payments on its properties.

In April, 1926, the Board of Directors appointed a committee to devise ways and means of taking care of the obligations of the Tampa Company. McKay, one of its principal shareholders, was made chairman of the committee. McKay first endeavored to prevail upon the mortgage-holders to accept preferred stock in lieu of their mortgage holdings. That plan failed. In October, 1926, a plan of liquidation was submitted to, and adopted by the directors of the Tampa Company. It provided that the stockholders should be given the option to purchase certain tracts of land at prices slightly in excess of the amounts required to discharge liens against such land; and that the least desirable property should be conveyed back to the mortgagees. The purpose of the plan was to save the company's equity in the most valuable tracts, including the Michigan Park Addition. Form letters, accompanied by a financial statement, were sent to the stockholders advising them of the plan. The statement, predicated on an appraisal made by three disinterested persons in June, 1926, showed assets of $1,995,200, and liabilities of $685,800, exclusive of capital stock. The stockholders were given until November 15 to purchase the property offered. However, stockholders failed to make sufficient purchases to carry out the plan, and the Tampa Company was unable to pay off the mortgage on the Michigan Park Addition. The mortgage was foreclosed in March, 1927. This foreclosure caused the liquidation plan to be definitely abandoned.

But in addition to the Michigan Park Addition, the Tampa Company had other real estate and bills receivable secured by mortgages.

A balance sheet attached to the Tampa Company's tax report dated December 31, 1926, showed assets of $1,705,042.21, and liabilities of $831,442.21, exclusive of capital stock.

■ The applicable revenue act permits a deduction for a loss, but not for a mere shrinkage in value, and the worthlessness must be established, directly or indirectly, by some identifiable event. Art. 144, Treas. Regulations 69; United States v. S. S. White Dental Mfg. Co., 274 U. S. 398, 401, 47 S. Ct. 598, 71 L. Ed. 1120; Royal Packing Company v. Commissioner (C. C. A. 9) 22 F.(2d) 536; Howard v. Commissioner (C. C. A. 6) 56 F.(2d) 781; Gowen v. Commissioner (C. C. A. 6) 65 F.(2d) 923.

■ Witnesses for the Investment Company purporting to qualify as experts testified that in their opinion the stock of the Tampa Company became worthless in 1927. Respondent offered no testimony. A jury, court, or board is not bound by the testimony of an expert, but may use its own judgment in arriving at the value. Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028; Tracy v. Commissioner (C. C. A. 6) 53 F. (2d) 575; Uncasville Mfg. Co. v. Commissioner (C. C. A. 2) 55 F.(2d) 893; Anchor Co., Inc., v. Commissioner (C. C. A. 4) 42 F.(2d) 99, 100; Am-Plus Storage Battery Co. v. Commissioner (C. C. A. 7) 35 F.(2d) 167; Gloyd v. Commissioner (C. C. A. 8) 63 F.(2d) 649; Patterson v. City of Boston, 20 Pick. (Mass.) 159.

■ The balance sheets of the Tampa Company as of December 31, 1926, showed that it had assets in excess of liabilities sufficient to give the stock a book value of approximately 85 per cent. of its par value. While the Michigan Park Addition was lost through foreclosure in 1927, the Tampa Company had other real estate and bills receivable secured by mortgages. The Investment Company made no effort to prove the 1927 value of such other property, or the amount of the outstanding debts of the Tam-

194

pa Company in 1927, or that the debts were in excess of the value of the property still owned by the Tampa Company.

In view of these facts, we are of the opinion that the Board did not err in concluding, as a matter of law, that the Investment Company had failed to carry the burden of proof and to establish that the loss occurred in 1927.

In Commissioner v. Wright (C. C. A. 7) 47 F.(2d) 871, 872, the court said:

"There was no evidence offered of its value at the time of surrender, and we deem it only fair that further opportunity be accorded the taxpayer for the presentation of such evidence. Accordingly, the cause is remanded to the Board of Tax Appeals, with direction to give opportunity for presenting evidence of the value of the stock at time of surrender."

The Investment Company was no doubt misled by the Commissioner's admission that the stock of the Tampa Company became worthless in 1926, and the erroneous statement of the issue at the hearing in which counsel for the Investment Company, the Commissioner, and the Board member conducting the hearing joined.

We are persuaded that on a rehearing the Investment Company will probably be able to establish that such stock became worthless during 1927. If this be true, the deduction should be allowed.

We conclude that the Investment Company should be given an opportunity to produce further evidence, and accordingly the case is remanded to the Board for rehearing on the correct issue.