### WEICKER v. HOWBERT, Collector of Internal Revenue.
### No. 1792.

Circuit Court of Appeals, Tenth Circuit.
March 27, 1939.

106

Dayton Deñious, of Denver, Colo. (Wilbur F. Denious and Hudson Moore, both of Denver, Colo., on the brief), for appellant.

Paul R. Russell, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., and Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

The Weicker Transfer & Storage Company[1] is a corporation which was organized under the laws of Colorado prior to March 1, 1913.

On April 29, 1929, its outstanding stock consisted of 3500 shares, held as follows:

| | | |
|---|---|---|
| R. V. Weicker | 2135.70 | Shares |
| F. C. Weicker | 1079.08 | " |
| H. C. Clark | 82.90 | " |
| L. G. Dameron | 67.44 | " |
| C. F. Barrett | 67.44 | " |
| A. E. Gallagher | 67.44 | " |

The par value of the shares was $350,000 and their book value $542,204.57. On April 29, 1929, the requisite action was tak-

[1] Hereinafter called the Transfer Company.

en to authorize a change in the capital structure of the Transfer Company from 3500 shares of the par value of $100 each to 50,000 shares without part value.[2]

On May 2, 1929, the stockholders of the Transfer Company duly authorized the exchange of old stock for new on the basis of 12-½ shares of new stock for one share of old stock.

The Weicker Investment Company[3] was duly organized as a corporation under the laws of Colorado on May 2, 1929. On the same day the Investment Company offered to exchange 3677.15 shares of its stock for certain assets of the Transfer Company of the value of $367,716.41. The offer was accepted by the Transfer Company and the exchange was duly consummated.

An agreement had been entered into between Robert V. Weicker and the Transfer Company whereby he was to surrender or cause to be surrendered 1470.86 shares of the old stock of the Transfer Company in exchange for the 3677.15 shares of the Investment Company to be acquired by the Transfer Company. Pursuant thereto Robert V. Weicker surrendered 391.78 old shares in the Transfer Company and received 979.45 shares in the Investment Company, and F. C. Weicker, his wife, surrendered 1079.08 old shares in the Transfer Company and received 2697.70 shares in the Investment Company. For convenience, the Investment Company stock was issued directly to Robert V. Weicker and F. C. Weicker. No additional stock was issued by the Investment Company. The remainder of the old stock of the Transfer Company was exchanged for new on the basis of 12-½ for one. Immediately thereafter Robert V. Weicker transferred one share of his stock in the Transfer Company to F. C. Weicker to qualify her as a director in the Transfer Company. The table set out in Note 4 shows the effect of exchanges of stock and the value of the shares.

From the table set out in Note 4 it will be observed that prior to the transfer, Robert V. Weicker owned 61 per cent, F. C. Weicker 30.8 per cent, and the minority stockholders 8.2 per cent of the stock of the Transfer Company; that after the transfer, Robert V. Weicker owned 85.9 per cent, F. C. Weicker none, and the minority stockholders 14.1 per cent of the stock of the Transfer Company; and that after the transfer, F. C. Weicker owned 73.4 per cent and Robert V. Weicker 26.6 per cent of the stock of the Investment Company.

It will be further observed that on the basis of the stipulated value, the aggregate value of the stock of Robert V. Weicker in the two corporations, the value of the stock of F. C. Weicker in the Investment Company, and the value of the stock of the minority stockholders in the Transfer Company, after the exchange, was exactly the same as the value of the stock originally held by them respectively in the Transfer Company.

The assets transferred by the Transfer Company to the Investment Company in

---

[2] §§ 41–47, 48, 49, c. 41, 1935, Colo.Stat.Ann.

[3] Hereinafter called the Investment Company.

[4]

| Original Holdings in Transfer Company | | | | Holdings after May 2, 1929 | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Shares in Transfer Company | % of Total | Book Value | Shares in Investment Company | % of Total | Book Value | Shares in Transfer Company | % of Total | Book Value |
| R. V. Weicker | 2,135.70 | 61. | $533,975 | 979.45 | 26.6 | $ 97,945 | 21,799 | 85.9 | $435,980 |
| F. C. Weicker | 1,079.08 | 30.8 | 269,770 | 2,697.70 | 73.4 | 269,770 | None | | |
| H. C. Clark | 82.90 | 2.38 | 20,725 | | | | 1,036.75 | 4.08 | 20,725 |
| L. G. Dameron | 67.44 | 1.94 | 16,860 | | | | 843. | 3.34 | 16,860 |
| C. F. Barrett | 67.44 | 1.94 | 16,860 | | | | 843. | 3.34 | 16,860 |
| A. E. Gallagher | 67.44 | 1.94 | 16,860 | | | | 843. | 3.34 | 16,860 |
| | 3,500.00 | 100. | $875,000 | 3,677.15 | 100. | $367,715 | 25,364.75 | 100. | $507,285 |

Recapitulation of R. V. Weicker's Holdings
after May 2, 1929

| | |
|---|---|
| Investment Co. | $ 97,945 |
| Transfer Co. | 435,980 |
| Total | $533,925 |

exchange for stock consisted principally of land, buildings, farms and farming equipment, and stock in the Mulvihill Investment Company. Certain of the buildings were warehouses which had been used by the Transfer Company for storage purposes. The Investment Company entered into a lease of such buildings with the Transfer Company for a period of ten years.

It was stipulated that the 3677.15 shares of Investment Company stock were the property of the Transfer Company at the time of their transfer to Robert V. Weicker and F. C. Weicker in exchange for stock of the Transfer Company; that the March 1, 1913, value of the 391.78 shares of Transfer Company stock surrendered by Robert V. Weicker was $11,015.69; and that the fair market value of the 3677.15 shares of stock of the Investment Company received by Robert V. Weicker and F. C. Weicker was $367,716.41, being the book value of the assets transferred to the Investment Company.

The Commissioner ultimately determined that Robert V. Weicker realized a capital gain of $86,770.25 from the exchange of the 391.78 shares of the Transfer Company stock for 979.45 shares of the Investment Company stock, and that his tax liability was $11,195.14, with accrued interest. Robert V. Weicker paid the amount of the tax determination with interest, duly filed a claim for refund which was denied, and brought this action to recover the amounts paid, with interest. From a judgment for the defendant, Robert V. Weicker has appealed.

Counsel for the taxpayer make two contentions. First, that the transaction was a reorganization under the provisions of Section 112 of the Revenue Act of 1928, 26 U.S.C.A. § 112, and no taxable gain was realized. Second, that the stock of the Investment Company received by Robert V. Weicker had no fair market value and that no taxable gain is realized where the property received in exchange does not have a value realizable in money's worth.

### 1.

Section 112 of the Revenue Act of 1928, 45 Stat. 816, provides that upon the sale or exchange of property the entire amount of the gain or loss shall be recognized "except as hereinafter provided in this section." It further provides:

Sec. 112 (b) (3) "Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." 26 U.S.C.A. § 112(b) (3).

Sec. 112 (i) "Definition of reorganization.—As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation." 26 U.S.C.A. § 112(g) note.

Sec. 112 (j). "Definition of Control. As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." 26 U.S.C.A. § 112(h).

We are of the opinion the transaction does not fall within the definition of reorganization embraced in subdivisions A and B of § 112 (i) (1). True, at the consummation of the exchange between the Transfer Company and the Investment Company, the former had acquired all the stock of the Investment Company, and at that point the plan fulfilled the requirements of subdivisions A and B. But to stop there would exclude the transaction out of which the asserted tax liability arose.

To be of avail to Robert V. Weicker, the latter transaction must be embraced in the plan.

So viewed, the plan does not fall within subdivision A because after the 'Transfer Company had transferred to Robert V. Weicker and F. C. Weicker the stock it had acquired in the Investment Company in exchange for their old stock, the Transfer Company no longer held the majority of the shares of stock of the Investment Company. Neither does it fall within the purview of subdivision B, because F. C. Weicker owned a majority of the outstanding shares of stock of the Investment Company and no stock in the Transfer Company and hence neither the Transfer Company nor its stockholders were in control of the corporation to which its assets had been transferred.

It is true that Robert V. Weicker transferred one of his shares in the Transfer Company to F. C. Weicker as a qualifying share, but this was a personal transaction between them and the minutes of the several meetings at which the plan was formulated and carried out do not indicate that this latter transaction was any part of the plan. It was purely a personal transaction between Robert V. Weicker and F. C. Weicker.

■ But we think the same result follows if it be considered a part of the plan. In order to come within the purview of subdivision B, there must be a continuity of interest on the part of the transferor corporation or its stockholders in the transferee corporation amounting to a control by the former of the latter. The interest of the transferor or its stockholders must continue to be "definitely represented in substantial measure in" the transferee. Groman v. Commissioner, 302 U.S. 82, 89, 58 S.Ct. 108, 112, 82 L.Ed. 63. It "must be definite and material; it must represent a substantial part of the value of the thing transferred." Helvering v. Minnesota Tea Company, 296 U.S. 378, 385, 56 S.Ct. 269, 272, 80 L.Ed. 284.[5]

While the principal business of the Transfer Company was the transfer and storage business, over the period of its existence it had acquired substantial assets which had no direct relation to its principal business, such as farms, farming equipment, sheep, and investments. Robert V. Weicker was advancing in years and was giving thought to retiring from the business and turning it over to younger men in his organization. He was unwilling to do this so long as there remained in the Transfer Company assets in the nature of investments not directly related to the transfer business which had been accumulated over a period of years. He gave consideration to the taking of these assets out of the Transfer Company and placing them in a trust, but finally adopted the plan of placing them in a separate corporation. The manifest purpose was to take these assets out of the Transfer Company and put them in a corporation, the control of which should be lodged in F. C. Weicker. The effect of the consummation of the plan was to create two separate and distinct corporations engaged in separate and distinct enterprises. Aside from the rental of the warehouses they had no connection and lent no mutual cooperation or advantage. The Transfer Company had no real interest in the future of the Investment Company. The success of the latter would not directly benefit nor its failure directly injure the Transfer Company.

■ We do not agree with the government's contention that to constitute control by the stockholders of the transferor within the meaning of subdivision B, it is essential that they acquire stock in the transferee substantially in proportion to their former interests. But we are of the opinion that the requirement of the statute is not met where the controlling stockholder in the transferee corporation retains in place of a former substantial interest, a mere qualifying share in the transferor corporation. The power to control through stock ownership the policies and affairs of the transferee corporation must rest upon something more substantial and less tenuous than a mere qualifying share. Here, after the consummation of the plan, the interest of F. C. Weicker in the Transfer Company was nominal, while her interest in the Investment Company was dominant and controlling.

We conclude that under the plan as finally consummated there was lacking that requisite continuity of interest on the part of the Transfer Company or its stockholders in the Investment Company to bring

[5] See, also, Cortland Specialty Co. v. Commissioner, 2 Cir., 60 F.2d 937, 940; Hendee v. Commissioner, 7 Cir., 98 F.2d 934, 936.

the plan within the purview of subdivision B.

## 2.

■ The Commissioner found that the shares of the Investment Company received by Robert V. Weicker had a fair market value of $97,945.38. The Commissioner's finding is presumptively correct and the burden of overcoming it rested on the taxpayer.[6] It is buttressed by the stipulation that the 3677.15 shares of stock of the Investment Company received by Robert V. Weicker and F. C. Weicker as a whole had a fair market value of $367,716.41.

The opinions of experts were introduced tending to establish that the stock in the Investment Company belonging to Robert V. Weicker could not be exchanged for cash at a price reasonably proximate to its real or intrinsic value. The opinions were in part predicated on the fact that Robert V. Weicker's interest was a minority interest in a family-owned and controlled corporation.

■ The trial court was not bound to accept the opinions of the experts. As the trier of the facts, their credibility and the weight to be given their testimony was for him to determine; and in deciding the ultimate question as to whether the stock had a fair market value, he had the right to exercise his own judgment in the light of his general knowledge and experience, giving only that weight and consideration to the testimony of the experts which he believed it merited.[7]

■ There had been no sales of the stock establishing a market value. Resort to intrinsic value was necessary to establish fair market value. The trial court found that the stock had a fair market value of $97,945.38. We cannot say that the trial court erred in holding that the evidence offered by the taxpayer did not overcome the presumption created by the Commissioner's finding buttressed by the stipulation.

The judgment is affirmed.

---

[6] Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623; O'Meara v. Commissioner, 10 Cir., 34 F.2d 390, 395; Wyoming Inv. Co. v. Commissioner, 10 Cir., 70 F.2d 191, 192; Peerless Inv. Co. v. Commissioner, 9 Cir., 80 F.2d 427, 429.

[7] The Conqueror, 166 U.S. 110, 131–133, 17 S.Ct. 510, 41 L.Ed. 937; United States v. Washington Dehydrated Food Co., 8 Cir., 89 F.2d 606, 609; Gloyd v. Commissioner, 8 Cir., 63 F.2d 649, 651; Wyoming Inv. Co. v. Commissioner, 10 Cir., 70 F.2d 191, 193; Emerald Oil Co. v. Commissioner, 10 Cir., 72 F.2d 681, 682; Oxford Paper Co. v. United States, Ct.Cl., 56 F.2d 895, 896; Cf. Ewing v. Goode, C.C.Ohio, 78 F. 442, 444.