OPINION. Kern, Judge: In 1948 the Edwards Cattle Company, a corporation the stock of which was equally owned by petitioners Williamson and Edwards, transferred certain assets to a newly formed corporation, Okeechobee Cattle Company, and also transferred certain other assets to a second newly formed corporation, Caloosa Ranch, Inc., in exchange for all the capital stock of these corporations. The Edwards Cattle Company retained some of its original assets so that all three corporations thereafter were able to conduct a cattle ranch business. The stock of Okeechobee was distributed equally to Edwards and Williamson who, prior to the transactions herein described, were the sole stockholders of Edwards Cattle Company, while 999 of the 1,000 shares of Caloosa were distributed to Williamson (including 1 share to his wife) and 1 share was transferred to Edwards. In exchange for the stock of the two new corporations thus distributed, Williamson surrendered all of his stock, 50 shares, in Edwards Cattle Company and Edwards surrendered 5 of his 50 shares, retaining 45 which were thereafter the only shares of Edwards Cattle Company outstanding. The alleged business purpose for this transaction was to remove an impasse between Williamson and Edwards concerning the management of the original cattle ranch properties and to so divide these properties as to permit each to manage a portion in accordance with his own theories and both to continue to manage a third portion as to which they held similar views. Petitioners contend that the foregoing transactions constituted a reorganization as defined in section 112 (g) (1) (D) of the Internal Revenue Code of 1939; that' the receipt of the stock of the two new corporations by Edwards Cattle Company in exchange for certain of its properties was tax free under section 112 (b) (4); and that the subsequent receipt of this stock by petitioners in exchange for stock in Edwards Cattle Company was tax free under section 112 (b) (3). The respondent determined that the petitioners realized income upon their receipt of the shares of Okeechobee and Caloosa and that the series of transactions in connection therewith did not constitute a tax-free reorganization, basing his determination upon the following grounds: 1. The purported reorganization was not consummated pursuant to a plan of reorganization within the meaning of section 112 in that the various steps were not effected in accordance with the plan as adopted by the stockholders and directors at their meetings on February 5, 1948. The plan called for the distribution by Edwards Cattle Company of all of the stock of Okeechobee in exchange for 10 per cent of its own capital stock, and of all of the stock of Caloosa for 45 per cent of its own capital stock. The alleged surrender of 5 shares of Edwards Cattle Company by each of the petitioners for the Okeechobee stock would have left each with 45 shares, and the respondent urges that there is no possible way that Williamson could have exchanged his 45 shares for 999 shares of Caloosa and for Edwards to have received 1 share of Caloosa and yet to have maintained an equal division of the assets. A comparison of the values, respondent contends, shows that if Edwards received 500 shares of Okeechobee and 1 share of Caloosa for 5 shares of Edwards Cattle Company, Williamson must have received the same and hence on his surrender of his remaining 45 shares of stock in Edwards Cattle Company, which was 45 per cent of the shares outstanding at the beginning of the series of transactions, he could have received no more than 998 shares therefor and, contrary to the plan, 100 per cent (1,000 shares) of Caloosa would not have been exchanged for 45 per cent of the stock of Edwards Cattle Company. Hence, he argues, the steps actually taken were not pursuant to the plan of reorganization. 2. The reorganization lacked a business purpose and was a mere sham primarily designed to permit a postponement of taxation on an exchange of stock, the record failing to support petitioners’ contention that it was undertaken to resolve the management differences of two equal owners. 3. There was an absence of continuity of interest by the parties as a result of the transaction. The deficiency notices herein were both issued more than 3 years but less than 5 years after the filing of the returns for 1948.. Petitioners have pleaded the statute of limitations as a bar to the assessment and collection of the deficiencies determined by the respondent. Sec. 275 (a). The respondent, in turn, has alleged that he is not barred from collecting the deficiencies under the 5-year rule of section 275 (c). Under the circumstances, the respondent has the burden of proving in each case that the petitioners omitted from their gross income for 1948 an amount properly includible therein and that the amount so omitted was in excess of 25 per cent of the gross income reported- by the petitioners in their respective returns for that year. C. A. Reis, 1 T. C. 9; Sidney N. LeFiell, 19 T. C. 1162. We are in agreement with the respondent’s third contention that the purported reorganization herein fails for lack of continuity of interest and we have, therefore, found it unnecessary to consider or discuss the first two arguments urged by him. The applicable provisions of the statute are set out in the margin hereof.[1] The determination of whether the corporation or its shareholders or both are in control of the transferee corporation within the meaning of these provisions is to be made at the conclusion of the entire transaction even though it involves several steps which for this purpose must be regarded as a whole. West Texas Refining & Development Co. v. Commissioner, 68 F. 2d 77 (C. A. 10, 1933); Halliburton v. Commissioner, 78 F. 2d 265 (C. A. 9, 1935); Commissioner v. Schumacher Wall Board Corporation, 93 F. 2d 79 (C. A. 9, 1937). At the completion of the purported reorganization transaction, the following situation existed: (1) Edwards was the sole stockholder of the transferor corporation, Edwards Cattle Company, Williamson having surrendered all of his stock therein; (2) Edwards and Williamson were the equal owners of one transferee, Okeechobee; and (3) Williamson was the holder of 99.9 per cent of the stock of the second transferee, Caloosa, with Edwards owning the remaining one-tenth of 1 per cent of this corporation’s stock. On this state of facts it is clear that neither the transferor corporation, Edwards Cattle Company, nor its sole shareholder, Edwards, was in control of either transferee corporation, Caloosa or Okeechobee. Control of Caloosa was in Williamson and control of Okeechobee was shared equally by Edwards and Williamson, the latter not then being a stockholder of the transferor corporation. The transaction, therefore, fails to qualify as a corporate reorganization because it fails to comply with the provisions of the statute intended to result in a continuity of interest by the transferor corporation or its stockholders, or both, in the transferee corporation. Paul L. Case, 37 B. T. A. 365, affirmed on this point 103 F. 2d 283 (C. A. 9, 1939); Robert M. Morgan, 41 B. T. A. 379, affd. 117 F. 2d 334 (C. A. 2, 1941); Weicker v. Howbert, 103 F. 2d 105 (C. A. 10, 1939); Giles E. Bullock, 26 T. C. 276. Petitioners have addressed their principal arguments to the proposition that continuity of interest was not destroyed by the changes in the proportionate interests of Williamson and Edwards in the various assets upon the conclusion of the transaction. The cases they cite, for the most part, merely held that reorganizations under section 112 (g) (1) (D) did not fail where stockholder interests of the old corporation, constituting less than all but substantially more than a majority of the original interests, participated in the new corporation. Other cases cited by petitioners dealt with reorganization provisions different from the ones before us in the instant case. Petitioners’ arguments on the proportionate interest question, however, are not in point since our decision is not based upon any change in the relative interests of Edwards and Williamson in the original corporation’s assets which, as a result of the transaction, were divided among three corporations, but upon the absence of the control by the transferor corporation and/or its stockholders of the transferee corporations at the time of the completion of the transaction, which control is required by the statute. Even the cases cited by petitioners in support of their arguments with respect to the nonapplicability of a proportionate interest test to the transaction herein recognize the necessity for the transferor or its stockholders, or both, to be in control of the transferee immediately after the transfer. See, e. g., Roosevelt Investment Corporation, 45 B. T. A. 440, 452. We do not agree with petitioners’ argument that the several cases cited in support of our decision were wrongly decided, and we need only say in respect of the various hypothetical situations described by petitioners in urging us not to follow these cases that such situations are not before us for decision and, whatever their resolution might be, they do not bear upon our holding herein. Section 368 (a) (1) (D) of the Internal Revenue Code of 1954, which is not applicable to the year in issue, provides as follows :• SEO. 368 (a). Reorganization.— (1) In general. — For purposes of parts I and II and this part, the term “reorganization” means— ⅜ * # * ⅜ * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356; The report of the Senate Committee on Finance, S. Kept. No. 1622, 83d Cong., 2d Sess., states as follows at pages 273-274: Subparagraph (D) of subsection (a) (1) restates the definition of existing law appearing in section 112 (g) (1) (D) of the Internal Revenue Code of 1939. Under this definition the term “reorganization” includes a transfer by a corporation of all or a part of its assets to another corporation if immediately after such transfer the transferor corporation, or its shareholders, or both, are in control of the transferee. Your committee’s hill has altered, the definition to provide that if the control of the transferee corporation is in the transferor corporation or in persons who were shareholders of the transferor, or any combination thereof, the transfer will, nevertheless, qualify as a reorganization under section 368 (a) (1) (D), the control owned by these persons need not be in the same proportion as it was before the transfer. For example, corporation A owns only properties connected with a drug store and a hardware store. Corporation A transfers the drug store properties to corporation D in exchange for all the stock of D and transfers the hardware store properties to corporation H in exchange for all the stock of H. Immediately thereafter, corporation A distributes all the stock in corporation D to X, one of the two shareholders in A, in exchange for all of X’s stock and distributes all the stock in corporation H to X, the other shareholder in A, in exchange for all his stock. The distributions qualify under section 355. The transfer of the properties by A is a reorganization under subparagraph (D). It should be noted, however, that in the event that the values of the properties transferred to corporations D and H are disproportionate to the value of the stock in A held by shareholders X and Y, the transaction at the shareholder level may have the effect of a gift or a compensation. See section 355. [Emphasis supplied.] It appears from this report that Congress intended to extend tax-free treatment after the effective date of the Internal Revenue Code of 1954 to the type of reorganization transactions effected by the petitioners herein. At least, the fact that control of the transferee corporations was either in the hands of or shared by Williamson, who was a shareholder of the transferor corporation immediately before the transfers, would not have prevented the qualification of the transaction as a reorganization. However, it is quite clear from the Senate Committee Report and from the change in the statutory language that the existing law was amended and that the amendment was not merely declaratory of the prior law. The parties have stipulated the fair market values of the stock of Okeechobee and Caloosa on March 20,1948, the date of the purported reorganization. These values differ from those used by the respondent in his deficiency notices, and in his brief he has recomputed the amount of the long-term capital gain realized by petitioners in the event we hold, as we have held, that the receipt of the stock in the new corporations was not pursuant to a tax-free exchange. Petitioners have raised no issue with respect to the amount of the gains recomputed ' upon the basis of the stipulated values and have not contested the new amounts so determined by respondent which are as follows:[2] 50 per cent taxable Petitioners Gain portion John. R. and. Oarrie I/. Edwards_$11, 960 $5, 975. 00 Frank W. and Helene Williamson_ 133, 335 66, 667.50 The parties have also stipulated that petitioners John R. and Carrie L. Edwards reported the following income on their return for 1948: Gross profit-$33, 024. 69 Salary_ 6,000. 00 Interest income- 1,703. 71 Total income-$40, 728.40 25 per cent thereof_ 10,182.10 For the purpose of determining whether petitioner Edwards omitted in excess of 25 per cent of his gross income from his return for 1948 under section 275 (c), only the portion of the capital gain which is to be taken into account in computing taxable income is to be considered. Emma B. Maloy, 45 B. T. A. 1104. It is obvious that the amount so omitted by Edwards ($5,975) was less than 25 per cent of the total gross income reported ($10,182.10), and that the assessment and collection of a deficiency for 1948 as to him and his wife is barred by section 275 (a) and (c). A deficiency for 1950 has been stipulated and is hot barred. The petitioners Frank W. and Helene Williamson reported a total income of $7,809.49 on page 1 of their Federal income tax return for 1948. Annexed to this return was Form 1040F, Schedule of Farm Income and Expenses, containing a summary of their farm income and deductions computed on an accrual basis. This summary showed a gross profit of $10,710.14 (which amount also equaled the total receipts plus increment in livestock), expenses of $3,210.76, and a net farm profit of $7,499.38. Through error, only the amount of $3,210.76 instead of $7,499.38 was carried forward to Schedule C, page 2, of the return, thereby causing an understatement of $4,288.62 in the total income reported on page 1 as $7,809.49. For the purpose of determining the applicability of section 275 (c), it will make no difference to the petitioners Williamson whether we deem their gross income for 1948 to have been one or another of the following: (1) $7,809.49 as shown on page 1 of their return; (2) $12,098.11 which would have been shown if the correct amount of the net profit of farming operations as shown on the annexed Form 1040F had been carried forward in the preparation of the return; or (3) $15,308.87 which would result from taking into account the gross profit from farming instead of the net profit. Even if the last and largest figure were to be used, 25 per cent thereof ($3,827.22) would be far less than the omitted amount of taxable income from the corporate transaction ($66,667.50). Nor is it necessary, in view of our decision that this amount of $66,667.50 was omitted from the gross income of the Williamsons, to consider whether their erroneous failure to include in Schedule C, page 2, of their return an amount of at least $4,288.62, shown as properly includible therein by a schedule attached to the return, constituted an omission from gross income within the meaning of section 275 (c). The respondent has sustained his burden of proof and the deficiency determined with respect to the Williamsons for the year 1948 is not barred by the statute of limitations. Sec. 275 (c). Decisions will ~be entered v/nder Rule 50.