RICHARD S. SACCO AND JACQUELINE SACCO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sacco v. Commissioner
Docket No. 13884-83
United States Tax Court
T.C. Memo 1988-532; 1988 Tax Ct. Memo LEXIS 562; 56 T.C.M. (CCH) 684; T.C.M. (RIA) 88532; November 16, 1988; As amended November 22, 1988 *562 Respondent determined deficiencies for 1977, 1979, and 1980, based on unreported income from a photography business. Held: (1) Respondent has not met his burden of proving a substantial omission of income for 1977; the statute of limitations bars assessment and collection for that year. Secs. 6501(e)(1)(A) and 6501(a), I.R.C. 1954. (2) Petitioners have not met their burden of proof as to the unreported income; deductions allowed. Cohen v. Commissioner,39 F.2d 540 (CA2 1930). Harold J. Boreanaz, for the petitioners. Gary D. Borek, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax and additions to taxes under section 6653(a)[1] (negligence, etc.) against petitioners as follows: Additions to Tax
Year
Deficiency [2] *563 Sec. 6653(a)
1977
$ 4,350.37
$ 217.52
1979
4,823.10
241.16
1980
5,347.70
267.39
After concessions, [3] the issues for decision are as follows: (1) Whether the assessment and collection of a deficiency for 1977 are barred by the 3-year statute of limitations (sec. 6501(a)) or are allowed under the substantial omissions exception (sec. 6501(e)(1)); and (2) Whether petitioners had unreported income and, if so, in what amount. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Richard S. Sacco (hereinafter sometimes referred to as "Sacco") and Jacqueline Sacco, husband and wife, resided in Getzville, New York. Sacco worked for the Buffalo, New York, Police Department from May 1960 to June 1977. Thereafter, he worked as a laborer or labor *564 steward for various construction companies in and around Buffalo. Petitioners reported on their joint Federal income tax returns Sacco's income from his work with the police department and other jobs, and Jacqueline Sacco's income from various jobs; the amounts so reported are not in issue in the instant case. Sacco became interested in photography beginning in 1970 or 1971. In late 1974, he contemplated starting up a photography business when his brother offered him a portion of a building to use rent-free as a studio. Sacco began to remodel the studio space but never opened the doors for business. In 1974 and 1975, Sacco had business cards printed for "Richard's Photography Unlimited", bearing the words "Schools", "Commercial", "Wedding Specialist", and showing petitioners' home address and telephone number. During the years in questions, Sacco took pictures at weddings and for various local organizations, including a Little League team and local lodges; also, Sacco held himself out as a professional photographer. He had previously bought an order book (hereinafter sometimes referred to as "the order book") to give receipts to people he took pictures for, and a rubber stamp with *565 the notation "Richard's Studio, 688-5641" which he used to stamp the cover and each of the receipts in the order book. Sacco advertised his services as "Photography Unlimited by Richards" in a program for a local lodge's dinner dance that took place in 1978. Sacco and a friend came up with the name "Aberdeen" for a photography business. Sacco used the name "Aberdeen" or "Aberdeen Studios" when buying photographic supplies in order to get a business discount, or a lower price, at David Photo Service, Inc. (hereinafter sometimes referred to as "David"). Some of the purchases were paid for on credit, while others were paid for in cash. Sacco bought photography supplies and services from David on credit in at least the amounts shown in table 1. Table 1
Year
Amount
1977
$   224.85
1979
1,006.70
1980
1,064.24
In addition, Sacco bought photography supplies and services from David for cash in each of the years in issue. Cash purchases at David were not signed for, and all of the receipts in the record in the instant case were signed by Sacco or by a member of his family. Sacco's expenditures at David exceeded the amounts shown in table 1 for the years in issue. From 1975 on, Sacco acquired *566 catalogs from wholesale wedding album suppliers. He generally got the catalogs at David. Sacco did commercial photography work as an employee of Knack & Richards, Inc., a commercial photography company. Some of the other employees "did weddings". Sacco did not do weddings in the course of that employment, but learned how to do so from his fellow employees. On their 1977 tax return, petitioners reported that Sacco had received $ 372 in wage income from Knack & Richards, Inc. On September 8, 1981, Diane Bloomquist (hereinafter sometimes referred to as "Bloomquist"), a Special Agent for the Internal Revenue Service, telephoned the number shown on a Richard's Photography Unlimited business card. A woman answered the phone. Bloomquist introduced herself as Diane Swenson and asked if she had reached Richard's Photography Unlimited. The women replied affirmatively. Bloomquist asked to speak to the photographer, and Sacco came to the phone. During their telephone conversation, Bloomquist told Sacco that she was getting married, and that she wanted an appointment with him to discuss whether he would be the photographer for her wedding. Sacco asked Bloomquist if she had contacted any *567 other photographers, and she said she had not. Sacco said that he did excellent work and that his albums were guaranteed for five years. Bloomquist told Sacco that her fiance's name was Roger Rosselli (hereinafter sometimes referred to as "Rosselli"), and that their wedding probably would be in late February of 1982. (Rosselli also was a Special Agent of the IRS.) Sacco told Bloomquist that he did all the photography work himself, and that he took photographs for 28 to 30 weddings per year. During this telephone call, Bloomquist and Sacco made an appointment for Bloomquist and Rosselli to come to petitioner's home on September 10, 1981. On September 10, 1981, Bloomquist and Rosselli, posing as an engaged couple, met with Sacco in the basement of petitioners' home. There were no signs on or outside petitioners' home that would indicate that a photography business or any other commercial activity was carried on in the home. At that meeting, Sacco told Bloomquist and Rosselli that he had been a wedding photographer for 11 years; that he once had a darkroom in the basement, but had since found it more economical to hire out his developing work; and that he currently had his wedding *568 pictures developed at David. Sacco showed Bloomquist and Rosselli several wedding album catalogs and a sample wedding album with pictures of various weddings. Sacco explained in detail to Bloomquist and Rosselli his methods of operation for taking photographs, and his method of keeping track of the various weddings and photographs taken at each wedding. He stated that he required a $ 100 deposit and payment of an additional $ 100 on completion of the preview book. Sacco further said that he had done more than 500 weddings but that during recent years he had taken photographs for only 28 to 30 weddings per year, and that he did all the photography work himself, charging between $ 250 and $ 750 per wedding. Sacco used the order book to fill out an estimate for his services at the wedding, to be performed at a total charge of either $ 475 or $ 565, depending on the options chosen by Bloomquist and Rosselli. Sacco was ready, willing, and able to do the wedding album for Bloomquist and Rosselli as a business transaction. However, Bloomquist and Rosselli did not enter into an agreement with Sacco. In the notice of deficiency, respondent determined that Sacco had $ 15,000 of unreported *569 income for each of the years in issue. This was based on 30 weddings per year times an average charge of $ 500 per wedding. Respondent did not allow for any expenses in determining the amount of deficiency. Petitioners timely filed their tax returns for 1977, 1979, and 1980. Respondent mailed the notice of deficiency to petitioners on March 4, 1983. On their 1977 tax return, petitioners reported the gross income items listed in table 2. Table 2
Wages
$ 16,362 Interest
207 State and local income tax refund
285 Uniform allowance
125 Rent (see n.8, infra)
(22)
$ 16,957 * * * Sacco regularly performed photography services during 1977, 1979, and 1980. Petitioners had unreported income from Sacco's photography services during each of these years. OPINION Respondent maintains that, in each of the years in issue, Sacco was in the trade or business of providing photography services for a profit and that Sacco's taxable receipts were $ 15,000 in each of these years. Petitioners concede that Sacco did photography work during the years in issue, but maintain that none of this work was done for profit. That is, that all of Sacco's services either constituted gifts, or resulted in reimbursements *570 only for his costs. Petitioners also contend that the statute of limitations bars assessment for 1977. We agree with petitioner's statute of limitation contention. We largely agree with respondent as to 1979 and 1980. Most of the evidence on respondent's part consists of Sacco's statements to Bloomquist and Rosselli. Most of the evidence on petitioners' part consists of Sacco's testimony. With few exceptions, Sacco corroborated Bloomquist's testimony as to what Sacco had told her and Roselli. At trial, Sacco testified that his statements to Bloomquist and Rosselli were merely "puffery". However, Sacco was not merely trying to have us believe that his earlier statements constituted undue praise or "exaggerated commendation" (American College Dictionary, Random House, p. 980 (1970)). Rather, Sacco testified, in effect that he had lied to Bloomquist and Rosselli in order to get them to give him an order for a wedding album on which he hoped or expected to turn a profit. We note that Sacco's testimony at the trial was in accordance with the Sacco understood to be in his interest at the time of the trial, and Sacco's earlier statements to Bloomquist and Roselli were in accordance *571 with what Sacco understood to be in his interest at that earlier time. Neither side has presented us with persuasive evidence to corroborate either Sacco's earlier statements or his trial testimony as to the amount of his taxable receipts from his photography activities. We consider first the question of the statute of limitations for 1977 and second the question of unreported income. I. Statute of Limitations
Petitioners have properly raised in their petition the affirmative defense of the statute of limitations for 1977, [4] under section 6501(a). [5] Rule 39. [6] *572 In general, section 6501 bars assessment of an income tax deficiency more than 3 years after the date the tax return was filed. If the taxpayer proves that the notice of deficiency was mailed more than 3 years after the filing, then respondent has the burden of pleading and proving the existence of an exception to the general period of limitations. Farmers Feed Co. v. Commissioner,10 B.T.A. 1069 (1928). See Miami Purchasing Service Corp. v. Commissioner,76 T.C. 818, 823 (1981). In the instant case, petitioners have pled the statute of limitations as an affirmative defense in their petition and have proven that their tax return for 1977 was filed more than 3 years before the notice of deficiency was mailed. Respondent concedes as much. Respondent contends that the instant case falls within the exception to the general period of limitations set forth in section 6501(e)(1)(A). [7] Under this provision, the generally applicable 3-year period is extended to 6 years when there has been an omission from gross income of "an amount properly includible therein which is in excess of 25 percent of the amount of gross income *573 stated in the return." The parties agree that, if respondent proves the 25-percent omission, then the statute of limitations does not bar assessment for 1977; otherwise it does. The burden is on respondent to establish, by a preponderance of the evidence, an omission of more than 25 percent of petitioner's reported gross income. Stratton v. Commissioner,54 T.C. 255, 289 (1970); Phillipp Bros. Chemicals, Inc. (Md.) v. Commissioner,52 T.C. 240, 254-255 (1969), affd. 435 F.2d 53 (CA2 1970); Williamson v. Commissioner,27 T.C. 647, 659, 662-663 (1957); see Peters v. Commissioner,51 T.C. 226, 230 (1968). *574 Respondent has the burden of proof as to how much gross income was stated on the tax return (see n.8, infra), as well as how much was omitted. Davenport v. Commissioner,48 T.C. 921, 928 (1967). The 6-year statute of limitations applies to both spouses on a joint tax return where respondent proves that a sum was "properly includible" in the aggregate gross income of the joint taxpayers (whether or not that sum is properly attributable to only one of the spouses) and exceeds 25 percent of the gross income reported. Benjamin v. Commissioner,66 T.C. 1084, 1100-1101 (1976), affd. 592 F.2d 1259 (CA5 1979). Sacco's activities in performing photography services for others during each of the years in issue have led us to find that Sacco had unreported income from these services in each of these years. However, none of the evidence of record in the instant case -- except for Sacco's statements to Bloomquist and Rosselli -- suggests that Sacco's photography services produced so much gross income in 1977 as to exceed 25 percent of the amount of the gross income stated in petitioner's 1977 tax return. Even Sacco's statements to Bloomquist and Rosselli were not specific as to 1977. The evidence *575 summarized in table 1, supra, suggests that Sacco's 1977 photography activities may have been substantially less than his 1979 and 1980 photography activities. That evidence is far from conclusive, but it seems to us that it points somewhat in petitioner's favor. We conclude that the evidence in the record would not support a finding that petitioners omitted more than $ 4,239.25 of gross income (25 percent of the total shown in table 2, supra) from their 1977 tax return. [8] *576 Respondent has failed to carry his burden of proof as to 1977, so the 6-year statute of limitations does not apply and 1977 is closed by the general (3-year) statute of limitations. We hold for petitioners on this issue. II. Unreported Income
Gross income includes gains derived from business, including the providing of photography services and the photos or albums produced by those services. Section 61(a)(2). [9]
Respondent's determinations as to matters of fact in the notice of deficiency are presumed to be correct, and petitioners bear the burden of showing that these determinations are wrong. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). As with the statute of limitations issue, both sides rely on Sacco -- respondent on Sacco's out-of-court statements and petitioners on Sacco's in-court testimony. Neither side has provided us with the specifics of any single photography transaction or group of transactions *577 (other than credit purchases from David). Neither side has shown us that any single transaction resulted in a profit, a loss, or a match of expenses and receipts. What we have is persuasive evidence that, from late 1974 until at least 1981, Sacco tried to be a professional photographer and that during that time he took photographs at many events such as weddings. He outfitted himself with such paraphernalia as business cards, the order book, a trade name, a rubber stamp that he used to print his trade name on the order book, another trade name that he used in order to buy photography items and services at lower prices, a display album, and album catalogs. He actively sought business as shown by his advertisement on a lodge's dinner dance program and his dealings with Bloomquist and Rosselli. We believe, and we have found, that Sacco had unreported income from the performance of photography services during each of the years in issue. The question of how much income Sacco had in 1979 and in 1980 is much more troubling. Petitioners contend that Sacco did his photography work for friends, relatives, friends of friends, etc., and that Sacco never charged them more than his costs. But *578 petitioners did not produce any witness to corroborate any such transaction. Petitioners did not produce any books or records to corroborate any such transaction. Sacco was unable to give us the details (costs and receipts) of any such transaction. Respondent determined that Sacco did 30 weddings a year and received an average of $ 500 a wedding, but did not produce any witness who could testify as to any one of the 90 weddings assertedly done by Sacco during the 3 years in issue. Nor did respondent produce any specific evidence of receipts of income by Sacco, even though Sacco conceded that in many instances he had been reimbursed for his costs. Although we have concluded, on the basis of a preponderance of the evidence, that Sacco had unreported income, we cannot determine the amount of the income. Respondent's determination as to receipts is supported by Sacco's statements to Bloomquist and Rosselli. Petitioners contend that they have carried their burden of proving that Sacco's receipts were less than the amounts that respondent determined in the notice of deficiency; they rely on Sacco's testimony at the trial. As we have noted, supra, Sacco's statements to Bloomquist and *579 Rosselli were in accordance with what Sacco understood to be in his interest when he made those statements. Sacco's testimony at the trial was in accord with what Sacco understood to be in his interest at the time of the trial. We refuse to believe Sacco's testimony that he never made a profit on any of his photography activities. The most that could be said of Sacco's testimony is that Sacco might have exaggerated to Bloomquist and Rosselli the prices he received for his services and the frequency of his services. However, in order for petitioners to carry their burden of proof, they must convince us that it is more likely than not that Sacco's receipts were less than the amounts that Sacco determined. Convincing us that Sacco might have been puffing is not enough to convince us that it is more likely than not that he was puffing. [10] Sacco's uncorroborated testimony, for the reasons set forth above, carries insufficient weight to meet petitioner's burden. We conclude that petitioners have failed *580 to carry their burden of proving that Sacco received less than $ 15,000 in 1979 and $ 15,000 in 1980 from his photography activities. However, in the notice of deficiency respondent did not allow for any expenses. Respondent pointed to the receipts showing Sacco's expenditures at David in order to show that Sacco was engaged in a photography business; it is appropriate for petitioners to deduct the expenses which respondent has effectively conceded are attributable to that business. Respondent's notice of deficiency was based on a calculation of omitted gross receipts, and there is sufficient documentation of expenses on the record to justify allowing petitioners a deduction for business expenses. Where a taxpayer establishes entitlement to some deduction, but is unable to establish the full amount, it is improper to deny the deduction in its entirety; rather, we should approximate the deduction as closely as we can "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." Cohen v. Commissioner,399 F.2d 540, 544 (CA2 1930); see also Helvering v. Taylor,293 U.S. 507, 514-515 (1935) (where a taxpayer has met his burden of showing that the IRS' determination *581 is excessive, the IRS's determination will not be upheld even though the taxpayer has not shown the correct amount of the tax liability). Although undoubtedly some of Sacco's documented expenditures at David were not business related, we have also found that some of Sacco's expenditures at David were cash purchases and are not accurately reflected by the receipts in the record. We conclude that petitioners are entitled to deduct the amounts shown on table 1, supra.
Petitioners also argue that respondent's determinations were arbitrary and capricious. We do not agree. Petitioners contend that Sacco's statements to Bloomquist and Rosselli were inherently unreliable, and that it was unreasonable for respondent to base his determination of deficiency on "puffing" statements. Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liabilities. If a taxpayer fails to keep the required records, or if the records he or she maintains do not clearly reflect income, then respondent is authorized by section 446 to reconstruct income in accordance with such method as, in his opinion, clearly reflects the full amount of income received. Meneguzzo v. Commissioner,43 T.C. 824, 831 (1965). *582 The reconstruction need only be "reasonable in light of all surrounding facts and circumstances ( Schroeder v. Commissioner,40 T.C. 300, 33 (1963)), and the taxpayer has the burden of proving that respondent's determination is erroneous. Welch v. Helvering, supra.
Petitioners have failed to show that Sacco's statements to Bloomquist and Rosselli were false and have not advanced any other arguments which convince us that respondent's determination of deficiency was arbitrary. In effect, petitioners contend that it is arbitrary for respondent to take Sacco at his word. We are willing to allow petitioners to show that they should not be forced to lie in the bed that Sacco has made for them. But petitioners must do something more in order to make this showing. On the record in the instant case, petitioners have failed to make this showing. We do not agree with petitioners that it was arbitrary or capricious for respondent to hold Sacco to his own statements. In any event, the question is not whether respondent's determination was arbitrary, but whether it was excessive. This matter is more clearly explained in Giddio v. Commissioner,54 T.C. 1530, 1534 (1970), as follows: In Estate of Peter Finder,37 T.C. 411, 423 (1961), *583 the Commissioner assigned erroneous reasons for the disallowance of proof remained for depreciation, yet the burden of proof remained with the taxpayer. See also Angellino v. Commissioner,302 F.2d 797 (C.A. 3, 1962), affirming on this point a Memorandum Opinion of this Court. In all of these cases the accuracy of the determination rather than the method of computation was the controlling factor in determining the validity and effect of the notice of deficiency. Indeed, in Rouss v. Bowers, supra, [30 F.2d 628] at 630, the court said that even "assuming * * * that Commissioner's method was arbitrary, this cannot avail * * * [petitioner] in the absence of any showing that it resulted in an erroneous assessment." See also Bishoff v. Commissioner, supra [27 F.2d 91] at 93. Petitioners have failed to show that respondent's determinations as to taxable receipts for 1979 and 1980 are excessive. We hold for respondent as to Sacco's receipts that are subject to tax. We hold that petitioners are entitled to offsetting deductions in the amounts set forth in table 1, supra.
In order to take account of the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section, subchapter, and chapter references are to sections, subchapters, and chapters of the Internal Revenue Code of 1954, as in effect for the years in issue. ↩
2. Of these amount,s self-employment taxes under chapter 2 are $ 245.37 for 1977, $ 572.10 for 1979, and $ 1,120.70 for 19800; the remaining amounts are chapter 1 income taxes. 3. The parties agree that the additions to tax and self-employment taxes are derivative and depend solely on our decision on the basic income tax liability. Consequently, we are not called on to address whether Sacco's activities rose to the level of a trade or business for purposes of the self-employment tax provisions. ↩
4. In their petition, petitioners claimed the bar of the statute of limitations as to both 1977 and 1979. At trial, petitioners conceded the statute of limitations as to 1979. ↩
5. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) General Rule. -- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. ↩
6. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice of Procedure. 7. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. * * * (e) Substantial Omission of Items. -- Except as otherwise provided in subsection (c) -- (1) Income taxes. -- In the case of any tax imposed by subtitle A [which includes both the income tax of chapter 1 and the self-employment tax of chapter 2; see n.2, supra] -- (A) General rule. -- If the taxpayer omits from gross income an amount properly includible therein income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. ↩
8. Our findings in table 2, supra, are based on respondent's requested finding of fact, unobjected to by petitioners. On schedule E attached to their 1977 tax return, petitioners reported $ 3,780 of rent receipts, $ 1,059 of depreciation expense, and $ 2,743 of other expenses. Since 1977 is closed by the statute of limitations even under the lesser gross income contended for by respondent, it would serve no purpose to analyze the statute to determine whether petitioners should be treated as having reported $ 3,780 gross income from rental activities, rather than the minus $ 22 gross income contended for by respondent. See Insulglass Corp. v. Commissioner,84 T.C. 203↩ (1985). 9. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. -- Except as otherwise provided in this subtitle [i.e., subtitle A, relating to income taxes], gross income means all income from whatever source derived, including (but not limited to) the following items: * * * (2) Gross income derived from business * * * ↩
10. Cf. Cohen v. Commissioner,39 F.2d 540, 544↩ (CA2 1930), where the taxpayer convinced the court that respondent had erred and that his error resulted in an excessive determination.